# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-1538

PAMELA MCCORMICK, next friend of
ERON MCCORMICK, a minor,

*Plaintiff-Appellant*,

v.

WAUKEGAN SCHOOL DISTRICT #60; THOMAS O'ROURKE,
individually and in his capacity as Head of the Special
Education Department; OLIVER RUFF, individually and
in his official capacity as Associate Principal; and JAN
NETERER, individually and in her capacity as Physical
Education Instructor,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 3598—**Harry D. Leinenweber**, *Judge.*

———————

ARGUED APRIL 14, 2004—DECIDED JULY 7, 2004

———————

Before BAUER, COFFEY, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Eron McCormick suffers from a
rare form of muscular dystrophy known as McArdle's
Disease. This disease, characterized by deficient levels of
glycogen phosphorylase and a concomitant inability to

process glycogen in the muscles, severely constrains Eron's physical capabilities. As a result, Eron and his parents developed an "individualized education program" ("IEP") with Waukegan School District #60 officials pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEA"), that limited Eron's participation in physical education class. After the relevant IEP was developed, Eron allegedly suffered muscle and kidney damage caused by overexertion in physical education class. His parents brought suit against the school district and several individual defendants under 42 U.S.C. § 1983 and various Illinois tort-law theories. The district court, ruling on a Federal Rule of Civil Procedure 12(b)(6) motion, dismissed the complaint without prejudice because Eron failed to exhaust the administrative remedies available under IDEA, 20 U.S.C. § 1415. For the reasons stated herein, we reverse.

## I.  History

In our de novo review of a dismissal for failure to exhaust administrative remedies, "we must take all of the well-pleaded factual allegations contained in the amended complaint as true and draw all inferences therefrom in the light most favorable to the non-moving party." *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir. 1994).

In August of 1999, Eron began attending the Waukegan School District Freshman Center, a school serving only students in the ninth grade. The Freshman Center received notice of Eron's physical limitations and the dangers of exceeding those limitations from correspondence signed by Dr. Teepu Siddique, the Director of the Neuromuscular Disorders Program at Northwestern Medical Faculty Foundation, Inc. An October 27, 1999, letter, for example, explained:

> [Eron] is a patient in our Muscular Dystrophy Clinic and has been under our care since 1992. Eron has a condition known as McArdle's Disease. This is a genetic metabolic disorder of the muscles that typically begins in childhood and progresses through adulthood.
>
> The characteristics of this disease are muscle fatigue, especially during physical activities, muscle pain and cramps, muscle stiffness with exercise and muscle wasting (loss of muscle mass). These patients will often develop dark burgundy colored urine from the abnormal presence of myoglobin (a muscle protein) which is released by the muscles following physical activities that exceed their limitations. Kidney and permanent muscle damage can occur as a result of this and vigorous exercise is to be avoided.

(R. 1, Ex. A). The Freshman Center provided Eron with elevator access and a bathroom pass to accommodate his needs throughout the school year.

Eron was scheduled to participate in physical education during his second (and final) semester at the Freshman Center. On February 14, 2000, near the beginning of the semester, Eron and his parents met with school officials for a reevaluation of his IEP. The IEP approved "adaptive physical education," with limited exertion. The McCormicks submitted several recommendations from doctors that advised Eron to be cautious when exercising and to stop anytime he was winded or felt muscle pain. The doctors suggested non-strenuous activities like walking, throwing lightweight objects, and social games. Jan Neterer, the physical education instructor, called Eron's parents after reviewing the IEP; during the conversation, she claimed to understand the limitations set forth in the IEP and agreed to follow it.

On June 9, 2000, just prior to the end of the semester (and Eron's stint at the Freshman Center), Neterer in-

structed Eron to run laps and perform push-ups. Neterer advised Eron that if he could not complete the tasks she assigned, he would receive a failing grade in physical education and would have to repeat the ninth grade. Despite Eron's protestations and references to his IEP, Neterer continued to threaten Eron with failure and berate him until he consented to the exercises. Eron informed Neterer that his muscles were cramping and hurting during the exercise; she nevertheless insisted that he should continue, again ignoring the IEP.

The day after these alleged events, June 10, 2000, Eron was taken to the emergency room because of painful and cramping muscles, severe exhaustion, and bloody urine, a sign of kidney damage due to severe myoglobin accumulation. Eron missed the last few days of the school year, but graduated from the Freshman Center and moved on to his sophomore year at the high school. Eron has experienced increased muscle weakness and pain since June 9, 2000. Moreover, permanent damage occurred to his kidneys, evidenced by the abnormal color of his urine following the overexertion. This damage may well have hastened the need for a kidney dialysis regimen and has increased the possibility of other kidney complications.

On May 16, 2001, Pamela McCormick, Eron's mother, filed a complaint in federal court on behalf of Eron. Count I, brought under 42 U.S.C. § 1983, alleged that the Defendants, acting under color of state law, violated Eron's constitutional rights to equal protection, to personal privacy, and to be free from cruel and unusual punishment. The other three counts were all brought under Illinois law. Count II claims that the Defendants acted wilfully and wantonly in ignoring the medical advice of Eron's doctors and the narrow proscriptions of the IEP, among other things. Count III claimed that the Defendants intentionally inflicted emotional distress on Eron; Eron does not allege

any ongoing or continuing emotional damages. And Count IV attempts to recover Eron's medical expenses and his parents' lost wages.

The district court, relying on *Charlie F. v. Board of Education of Skokie School District 68*, 98 F.3d 989 (7th Cir. 1996), dismissed the complaint without prejudice on the grounds that Eron had failed to exhaust the administrative remedies available to him under IDEA. This appeal ensued.

## II.  Analysis

Even though Eron did not invoke IDEA in his complaint, the district court properly considered whether he was required to exhaust under IDEA. The relevant section of IDEA is as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that *before the filing of a civil action under such laws seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added). It is uncontested that Eron did not exhaust the administrative remedies available under IDEA. The sole issue on appeal is whether Eron is required to exhaust before filing a complaint in federal court.

In *Charlie F.*, we answered the same question in the affirmative. 98 F.3d at 993. In that case, a teacher invited her pupils to air their grievances against Charlie, a student whose disabilities (attention deficit disorder and panic attacks) apparently disrupted the class. Charlie's ensuing

humiliation caused a loss of confidence and self-esteem; this, allegedly, led to fistfights and disruptions of Charlie's educational progress. *Id.* at 990.

Like Eron, Charlie filed a federal lawsuit with both federal and state-law theories of recovery, seeking only money damages (which IDEA administrative process does not provide). *Charlie F.* rejected outright the argument that a plaintiff could avoid IDEA administrative process by requesting only money damages: "[t]he statute speaks of available relief, and what relief is 'available' does not necessarily depend on what the aggrieved party wants." *Id.* at 991. Instead, courts should look to the "theory behind the grievance" to see if IDEA's process was activated: in Charlie's case, "the complaint [ ] filed on his behalf deals with acts that have both an educational source and an adverse educational consequence." *Id.* at 991-92. Thus, the damage done to Charlie, if proven, could in fact be remedied (in part at least) by services available under IDEA, such as psychological counseling or educational assistance. *Id.*

The Defendants insist that *Charlie F.* compels dismissal of the instant case for failure to exhaust IDEA administrative processes. Waukegan emphasizes that "developmental, corrective, and other supportive services (including . . . psychological services, physical and occupational therapy, . . . counseling services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability . . ." are available under IDEA. 20 U.S.C. § 1401(a)(17). Further, argues Waukegan, Eron brought a state-law claim for intentional infliction of emotional distress. Like *Charlie F.*, reasons Waukegan, we should find that IDEA could remedy at least some of Eron's damages through in-kind services, such as psychological counseling, rather than money damages.

Conversely, the McCormicks assert that Eron's case is distinguishable from *Charlie F.* For one, Eron's case

is premised on physical injury. IDEA does not provide medical services to disabled individuals (beyond diagnostic and evaluative services). The heart of Eron's claim is the permanent damage to his body from overexertion caused by Defendants' conduct. Second, Eron has not alleged any need for prospective educational assistance, whereas in *Charlie F.*, the court deduced that a significant amount of the damages requested would be premised on the harm to Charlie's education caused by his teacher's actions. The McCormicks were fully satisfied with Eron's high school experience after his graduation from the Freshman Center and did not claim that the physical education incident interfered in Eron's academic development.[1] Finally, with regard to the state emotional distress claim, Eron insists that he is suing only for the negative emotional experience on June 9, 2000, and that day's immediate aftermath (his hospitalization), not for an ongoing emotional condition, which might be addressed by prospective psychological counseling.

"[P]arents may bypass the [IDEA] administrative process where exhaustion would be futile . . . ." *Honig v. Doe*, 484 U.S. 305, 327 (1988). Eron contends that the particular circumstances of his case, as set out in the complaint, necessitate a finding that pursuing administrative remedies under IDEA would be futile. As *Charlie F.* stands alone in discussing this issue in Seventh Circuit case law, the collective wisdom of our sister circuits is particularly

---

[1] Eron has since graduated from high school. This fact alone does not affect our analysis of the problem, however. For one, graduation from high school does not necessarily eliminate the possibility of receiving benefits under IDEA. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 63 (1st Cir. 2002). Furthermore, the need to exhaust should not depend upon the extent of delay in litigation or the choice of a plaintiff to delay litigation until he or she graduates. *Id.*

helpful in deciding whether exhausting the administrative process would be a futile act for Eron.

"Where . . . a plaintiff has alleged injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies, then the courts should require exhaustion of administrative remedies." *Robb v. Bethel Sch. Dist.*, 308 F.3d 1047, 1054 (9th Cir. 2002) (holding that a student suing for lost educational opportunities and emotional damages based on her removal from the classroom in favor of allegedly deficient, unsupervised student tutoring must exhaust administrative remedies); *see also Polera v. Bd. of Educ.*, 288 F.3d 478, 490-91 (2d Cir. 2002) (rejecting a futility argument and holding that a blind student suing for lost educational opportunities and retroactive honor society recognition must exhaust administrative remedies); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 57-64 (1st Cir. 2002) (holding that a plaintiff must exhaust administrative remedies when she sought money damages under 42 U.S.C. § 1983, alleging that the school inappropriately disciplined her for conduct related to her disability).

On the other hand, if the plaintiff has alleged injuries that cannot "be redressed to any degree by the IDEA's administrative procedures and remedies[,]" then it would be futile to exhaust, and the disabled individuals can bring their disputes directly to court. *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274-75 (10th Cir. 2000) (holding that a disabled student who suffered a fractured skull and exacerbation of a seizure disorder when she was placed in an unsupervised windowless closet did not need to exhaust because the claim was brought "solely to redress" the physical injuries and was outside of the scope of IDEA); *see also Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275-76 (9th Cir. 1999) (holding exhaustion to be unnecessary and distinguishing *Charlie F.* by pointing to physical abuse and

injuries and the lack of possible remedies under IDEA's administrative processes that could address the plaintiff's damages).

In Eron's case, his complaint asserts that he suffered permanent physical injuries that will reduce the quality of his life—and perhaps even shorten it. The nature of his claim is not educational; no change to his IEP could remedy, even in part, the damage done to Eron's body. By adding an intentional infliction of emotional distress claim to his complaint, Eron only seeks to recover for the arguably outrageous actions of Neterer, the physical education instructor. He does not allege any ongoing emotional difficulties that might be addressed through IDEA. After closely examining the "theory behind the grievance" in Eron's complaint, we are convinced that it would be futile for Eron to exhaust the administrative process under the circumstances of this case because IDEA does not provide a remedy for his alleged injuries, which are non-educational in nature.[2]

---

[2] We are mindful of the Supreme Court's holding in *Booth v. Churner*, 532 U.S. 731 (2001), that, under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), prisoners are not excused from pursuing administrative remedies simply because they have requested relief (in that case, money damages) that is not available under a prison's administrative procedures. Contrary to the assertions of the Defendants, *Booth* does not compel exhaustion in every case tangentially related to a statute with administrative procedures. The relevant text of the PLRA is as follows:

> No action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The Supreme Court interpreted this to mean "that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth*, 532 U.S. at 741. As noted earlier, IDEA demands that a

(continued...)

### III.  Conclusion

For the foregoing reasons, we REVERSE the district court's dismissal of Eron's lawsuit and REMAND for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***

---

[2] (...continued)
plaintiff exhaust administrative remedies only when "seeking relief that is also available under this subchapter." 20 U.S.C. § 1415(l).

---