Sunn v. NH State Prison Warden          CV-02-168-M    10/31/02

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW HAMPSHIRE**


William Sunn and
Justin Barnaby,
     Plaintiffs

     v.

Bruce Cattell,
Warden, NH State Prison in Berlin,
     Defendant

Civil No. 02-168-M
Opinion No. 2002 DNH 197


**O R D E R**


    William Sunn and Justin Barnaby, both proceeding pro se, bring this action against Bruce Cattell, Warden of the Northern New Hampshire Correctional Facility ("NCF"), seeking declaratory and injunctive relief for what they claim are ongoing violations of their First and Fourteenth Amendment Rights.  Sunn and Barnaby, both of whom are incarcerated at NCF, contend that Cattell abridged their right to freely exercise their Native American religion and discriminated against them based on their

religion, in violation of the Equal Protection Clause of the Fourteenth Amendment.[1]

Sunn and Barnaby move for summary judgment based on procedural timeliness issues, arguing, incorrectly, that Cattell did not adhere to established deadlines for filing his acceptance of service of process and/or an answer to the complaint. Cattell filed an acceptance of service on June 12, 2002, within the time prescribed by the Magistrate Judge. See Acceptance of Service (document no. 10). See also Order of Magistrate Judge (document no. 4) at 11. He filed an answer on July 8th, within 30 days of the court order, dated June 10, 2002, approving the Magistrate Judge's Report and Recommendation. Because Cattell filed his acceptance of service and answer within the prescribed time frame, plaintiffs' motion for summary judgment (document no. 18.2) is denied.

---

[1] In addition, Sunn and Barnaby originally alleged that Cattell violated their rights under the American Indian Religious Freedom Act ("AIRFA"). But, in an earlier Order (Doc. No. 4), the Magistrate Judge properly dismissed that claim, since AIRFA "does not provide for any cause of action or judicially enforceable individual rights." Id.

Cattell also moves for summary judgment as to all claims against him.  Specifically, he contends that the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (Supp. 2002) ("PLRA"), precludes this court from hearing plaintiffs' claims because they have not exhausted available administrative remedies.  Sunn and Barnaby object, saying they complied with the PLRA's exhaustion requirements.

## Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, a court must "construe the record and all reasonable inferences from it in favor of the nonmovant (i.e., the party opposing the summary judgment motion)."  Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).  See Wynne v. Tufts Univ. Sch. of Med.,

976 F.2d 791, 794 (1st Cir. 1992). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir.1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). As the Court of Appeals for the First Circuit has cautioned, however, "evidence that is merely colorable or is not significantly probative cannot deter summary judgment." Wynne, 976 F.2d at 794 (quoting Anderson, 477 U.S. at 249-50) (internal quotation marks omitted). It is not enough that a party "rest upon mere allegations; it must set forth specific facts demonstrating that there is a genuine issue for trial." Ayer v. United States, 902 F.2d 1038, 1044-45 (1st Cir. 1990) (citations omitted).

## Background

Viewed in the light most favorable to plaintiffs, the pertinent facts are as follows. Sunn and Barnaby are members of the Native American Circle, an established Native American

-4-

religion.  They are both incarcerated at NCF, a New Hampshire State Prison in Berlin, New Hampshire, which permits inmates to participate in Native American religious ceremonies and rituals.  In addition, the chaplain at NCF dispenses Native American religious cards to those who practice in the Native American Circle.[2]

Sunn and Barnaby participate in Native American Circle activities at NCF and have requested certain items for use during those activities, as well as for the personal practice of their religion.  To date, they have been provided with only some of the many items sought, see Complaint (Doc. No. 1), at paras. 9-10, and they claim that Cattell's refusal to provide the remaining items violates their constitutionally protected right to freely exercise their religious beliefs.  They also advance an equal protection claim, in which they allege that while inmates at the New Hampshire State Prison in Concord are allowed to use both tobacco and the sacred pipe during religious ceremonies, their requests for those items have been denied.  Id. at para. 8(B).

---

[2]    The purpose of issuing Native American Religious Cards is unclear from the record.

The New Hampshire Department of Corrections ("NHDOC") has in place a comprehensive administrative system for addressing inmate complaints and requests. Each inmate is provided with a detailed description of the system in the "Manual for Guidance of Inmates" ("Inmate Manual"). Ex. D to Def.'s Mem. for Summ. J. (Doc No. 24). The system is also described in the NHDOC's Policy and Procedure Directive ("PPD"), statement number 1.16, entitled "Complaints and Grievances by Persons under DOC Supervision." Id.

The Inmate Manual describes in detail the means by which inmates may pursue a complaint or request. First, they are encouraged to discuss the problem or request with the particular staff member who can resolve the problem. If the discussion does not resolve the problem to the inmate's satisfaction, he or she may then fill out an inmate request slip, which must contain as much information as possible detailing the complaint. After completing a request slip, the inmate must place it in a request slip box or hand it to the lowest-level staff person able to deal with the problem. Once a request slip is completed and properly submitted, the investigative process begins. The PPD provides

that correctional officers shall respond to all complaints within seven working days, unless the issue raised by the inmate constitutes an emergency, in which case the complaint is addressed immediately.

If the "request slip process has not produced satisfactory answers or responses," the inmate may take the next step in the administrative process: complete and submit to the Warden a departmental grievance form ("grievance form"). Ex. D to Def.'s Mem. for Summ. J., PPD, statement number 1.1.6 (IV)(G). Upon receipt of a properly completed grievance form, the Warden will investigate the issues raised by the inmate and respond within fifteen days. Absent an emergency or a life threatening situation, however, grievance forms will not be accepted unless an inmate first completes a request slip and demonstrates that the request slip process has not resulted in a satisfactory response.

If the Warden has not resolved the grievance to the inmate's satisfaction, he or she may then pursue the final level of the administrative appeal by filing a grievance with the Commissioner

of Corrections. The Commissioner must investigate and respond to a final grievance within twenty days of its receipt. If a final grievance form is submitted to the Commissioner without evidence of "attempts at resolution at a lower level, the grievance will be sent to the activity which can best resolve it." Ex. D to Def.'s Mem. for Summ. J. PPD, statement number 1.16 IV(G)(3).

Both Sunn and Barnaby, independently, completed several request slips addressing a range of Native American issues. They received a response to each one, but elected not to appeal the resolution of any of those requests. Consequently, Cattell has not received any grievance forms from Sunn or Barnaby.[3] Nor has Philip Stanley, the Commissioner of Corrections, received any final appeals concerning any of the issues raised by plaintiffs. The Commissioner did receive a letter forwarded from the Governor's office, dated June 17, 2002, in which Sunn discussed his complaints concerning the NCF. Pls. Objection to Def.'s

_____

[3] One of Sunn's request slips, dated May 24, 2002, was addressed to Cattell. It was not, however, an appeal of an adverse response to a request; it was a separate and independent request.

Summ. J. (Doc. No. 28).  That letter was not, however, submitted in compliance with the NHDOC grievance procedures.

Sunn and Barnaby filed this lawsuit April 10, 2002, seeking relief under 42 U.S.C. § 1983, alleging that they have been precluded from using objects necessary to practice their religion, specifically: a buffalo skull; tobacco; a sacred pipe used in group ceremonies, as well as in private daily use; ethnic foods; and a sweat lodge.

## Analysis

The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 [of Title 42] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (Supp. 2002) (emphasis added); see generally Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983 (2002); Booth v. Churner, 532 U.S. 731 (2001).[4]

_____

[4]     In Porter, the Supreme Court resolved a split among the circuits concerning the proper scope of the phrase "prison

One of the main purposes of the PLRA is to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 122 S. Ct. at 988 (citing Booth, 532 U.S. at 737). Although once discretionary, in 1995 Congress "invigorated the exhaustion prescription" making the requirement mandatory. Porter, 122 S. Ct. at 988. Thus, a court may not address the merits of an inmate's prison conditions claim until it has first been shown that he or she exhausted all available administrative remedies. See id.; Booth, 532 U.S. at 741. It follows, then, that Sunn and Barnaby may only pursue their constitutional claims against Cattell if they have exhausted administrative remedies available under the NHDOC grievance system.

As to the exhaustion issue, plaintiffs contend that they "have made every reasonable [d]ocumented effort to resolve the issues at hand with the defendant Warden Cattell." Pls.

_____

conditions" as used in the PLRA. Porter, 122 S. Ct. at 992. The Court construed that phrase to mean all aspects of prison life, holding that, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. (citation omitted).

-10-

Objection to Def.'s Summ. J. ¶ 2. Sunn alleges that despite the fact that he has approached Cattell in a "professional and peaceful, diplomatic manner," Cattell continues to show no intention of resolving his complaints. Id. Importantly, however, while both Sunn and Barnaby completed request slips concerning various Native American issues at NHC, neither appealed any adverse decision by filing a grievance form with Cattell. So, while Sunn may have informally approached Warden Cattell in a "professional and peaceful, diplomatic manner," he plainly did not exhaust the administrative remedies available to him. Instead, he repeatedly took the first step of the administrative process - the submission of a request slip - without ever taking the next step, by submitting a grievance form to Warden Cattell.

In a final effort to avoid summary judgment, Sunn argues that he fulfilled the requirements of the PLRA by sending a letter to New Hampshire's Governor concerning various Native American issues at NCF. As noted above, the Governor's office routinely forwarded Sunn's letter to the Commissioner of Corrections, Philip Stanley. Although New Hampshire law permits

inmates to correspond with the Governor and the Commissioner of Corrections, without supervision by the NCF staff, see N.H. Rev. Stat. Ann. ("RSA") 622:15, the PPD provides that any correspondence sent to the Commissioner will be reviewed and "if the grievance does not provide evidence of attempts at resolution at a lower level, the grievance will be sent to the activity which can best resolve it." Ex. D to Def.'s Mem. for Summ. J., PPD statement number (IV)(G)(3). Consequently, Sunn's letter is not the equivalent of a grievance or subsequent final appeal to the Commissioner. Bypassing the second step of the administrative process - filing a grievance form - and sending a letter directly to the Governor's office is not consistent with the NHDOC administrative scheme and does not afford corrections officials the opportunity to resolve an inmate's complaints internally at the lowest effective level. Having failed to avail themselves of the avenues of appeal established by the NHDOC administrative grievance process, Sunn and Barnaby failed to comply with the PLRA's exhaustion requirement.

## Conclusion

The undisputed material facts of record reveal that neither Sunn nor Barnaby exhausted the administrative remedies available to them through the inmate grievance procedures. Consequently, pursuant to the provisions of the PLRA, the court cannot reach the merits of their claims, which are hereby dismissed, without prejudice.

Defendant's motion for summary judgment (Doc. No. 24) is granted and plaintiffs' motion for summary judgment (Doc. No. 18.2) is denied. The Clerk of the Court shall enter judgment in favor of the defendant and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 31, 2002

cc:  William Sunn, pro se
     Justin Barnaby, pro se
     Nancy J. Smith, Esq.

-13-