Espaillat v. Mousseau, et al.          CV-03-338-SM  07/28/04
                UNITED STATES DISTRICT COURT

                  DISTRICT OF NEW HAMPSHIRE


Miguel Espaillat,
      Plaintiff

      v.                                  Civil No. 03-338-SM
                                          Opinion No. 2004 DNH 112
Sergeant John Mousseau,
Sergeant (first name unknown) Guyette,
and Sergeant (first name unknown) Tracy,
each in his individual capacity,
      Defendants,


                       **O R D E R**


      Miguel Espaillat, a federal inmate, brings this action

against three correctional officers at the Cheshire County

Department of Corrections ("CCDC").  He claims that while he was

housed at CCDC as a pretrial detainee, defendants violated his

constitutionally protected rights by failing to protect him from

an assault by another inmate and by denying him appropriate

medical care for injuries he sustained in the attack.[1]

---

      [1]    Because Espaillat was a pretrial detainee when the
events in question occurred, the constitutional obligations owed
to him by the various defendants flow from the provisions of the
Fourteenth, rather than the Eighth Amendment.  Nevertheless, the
protections available to pretrial detainees under the Fourteenth
Amendment "are at least as great as the Eighth Amendment
protections available to a convicted prisoner." City of Revere
v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) (citing

Two of the defendants named in Espaillat's complaint (Guyette and Tracy) are no longer employed at CCDC and they have yet to be served with plaintiff's complaint. The remaining defendant, Sergeant John Mousseau, moves for summary judgment, saying the record establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law. Espaillat has not filed a response to Mousseau's dispositive motion and the deadline for doing so has lapsed. There is, however, a possible explanation for plaintiff's silence.

By letter dated June 21, 2004, counsel for Sergeant Mousseau notified the court that he had learned of plaintiff's transfer from a correctional facility in Massachusetts to one in Texas.[2] In his letter, counsel explained that he had served plaintiff with a copy of the pending motion for summary judgment at plaintiff's Massachusetts address, and noted that the motion was

_____

Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Thus, at a minimum, defendants had a constitutional duty not to be "deliberately indifferent" to Espaillat's serious medical (and security) needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

[2] To date, however, plaintiff has not notified the court of any change in his mailing address. See Local Rule 83.6(e) ("An attorney or pro se party who has appeared before the court on a matter is under a continuing duty to notify the clerk's office of any change of address and telephone number.").

not returned for lack of service.  Nevertheless, counsel wrote to plaintiff at his new address and told him that if he had not received the pending motion for summary judgment, he could telephone counsel (collect) and request an additional copy. There is no evidence suggesting that plaintiff made any such request.  Nor, however, is it clear that plaintiff actually received a copy of defendant's motion or that it was transferred with him to Texas when he was relocated (or even that he received defense counsel's letter).

Aside from whether plaintiff actually received a copy of defendant's pending motion, the record suggests that there is a fundamental problem with his pending lawsuit: nowhere does he allege (nor, necessarily, does he demonstrate) that he has exhausted administrative remedies available to him, as is required by 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA").  That statute provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

3

42 U.S.C. § 1997e(a). The Supreme Court has held that section 1997(e) requires an inmate to exhaust all available administrative processes before filing a federal suit relating to the conditions of his or her confinement, even if some or all of the relief the inmate seeks is not available through the administrative process. Booth v. Churner, 532 U.S. 731, 734 (2001) ("The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money. We hold that he must."). In light of that holding, the Court affirmed the lower court's dismissal, without prejudice, of Booth's Eighth Amendment claims for failure to exhaust.

Although the Supreme Court implicitly concluded that Booth's Eighth Amendment claims (e.g., assault and deliberate indifference to medical needs) did relate to "prison conditions" and, therefore, were subject to the PLRA's exhaustion requirement, there was some debate in various circuits (much, though not all, of it preceding the Booth opinion) as to whether such claims are properly viewed as falling within the scope of the PLRA's exhaustion requirement or, more specifically, the

4

phrase "prison conditions."  That issue was resolved by the Court

less than a year after it issued the Booth opinion, when it held:

> [T]he PLRA's exhaustion requirement applies to all
> inmate suits about prison life, whether they involve
> general circumstances or particular episodes, and
> whether they allege excessive force or some other
> wrong.

Porter v. Nussle, 534 U.S. 516, 532 (2002).

Consequently, the PLRA's exhaustion requirement applies when

the following three criteria are met: (1) the lawsuit was filed

by a "prisoner confined in any jail, prison, or other

correctional facility"; (2) he or she filed that lawsuit after

the effective date of the PLRA (i.e., April 26, 1996); and (3)

the lawsuit is "with respect to prison conditions," as that

phrase has been defined by the Supreme Court.  When an inmate

files suit without properly exhausting his or her administrative

remedies, dismissal (at least of the unexhausted claims) is

ordinarily required.  See Medina-Claudio v. Rodriguez-Mateo, 292

F.3d 31, 36 (1st Cir. 2002).

When a prison's administrative remedies include a grievance process, "strict compliance . . . is required or else dismissal must follow inexorably." McCoy v. Goord, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003). See also Houze v. Segarra, 217 F. Supp. 2d 394, 397 (S.D.N.Y. 2002) ("Prison officials are entitled to require strict compliance with an existing grievance procedure.") (citation and internal quotation marks omitted). The "strict compliance" requirement bars an inmate from claiming exhaustion when he has bypassed steps in the administrative process or failed to avail himself of available administrative appeals. See, e.g., Sunn v. Cattell, No. 02-168-M, 2002 DNH 197 at 11-12 (D.N.H. Oct. 10, 2002). See generally Booth 532 U.S. at 735. This is true even when, as here, the inmate has been transferred to another correctional facility. See Medina-Claudio, 292 F.3d at 35. See also Booth 532 U.S. at 735 n.2.

In this case, plaintiff says that on four occasions he requested a transfer out of his cell, citing concerns that his cellmate was violent and had threatened him. He claims that those requests fell on deaf ears. Sergeant Mousseau asserts,

6

however, that any requests for transfer must be made in writing and plaintiff never submitted any such request(s):

> Prior to this incident [i.e., the assault], Mr. Espaillat never requested a cell or housing pod transfer to me, nor submitted any documentation to the administration, requesting such transfers. Per institution policy and procedures, in order to grant a requested cell or day-room transfer, it must be submitted in writing and the staff must find a compelling reason to do so.

Exhibit A to defendant's motion for summary judgment, Affidavit of John Mousseau at para. 11 (emphasis supplied).

The keeper of the records at CCDC, Richard Van Wickler, has submitted certified copies of all records maintained by CCDC and relating to plaintiff. Nowhere in those records is there any copy of a written request by plaintiff that he be transferred to another cell. Nor is there any documentation suggesting that plaintiff notified correctional officials of his concerns about his allegedly violent cellmate. Thus, it would appear that plaintiff's requests for a transfer to another cell were all made orally, rather than in writing, as is required. And, more importantly, after those requests were allegedly ignored, there

7

is no evidence that plaintiff filed any sort of grievance with correctional facility administrators.

With regard to plaintiff's claim that one or more of the defendants were deliberately indifferent to his serious medical needs, there are, to be sure, records demonstrating that plaintiff periodically requested medical attention (primarily related to a pre-existing back condition and seasonal allergies). But, each of those requests appears to have resulted in either a physical examination by medical staff and/or a prescription for appropriate medication. Critically, there are no written records of any grievances filed by plaintiff alleging defendants were deliberately indifferent to his serious medical needs.

## Conclusion

In light of the foregoing, it appears that plaintiff's section 1983 claims alleging deliberate indifference to his serious medical and security needs must be dismissed in light of his failure to exhaust available administrative remedies. Nevertheless, given his pro se status and in light of his fairly

recent transfer out of state, plaintiff should be afforded a reasonable opportunity to demonstrate otherwise.

Accordingly, the Clerk of Court shall serve upon plaintiff at his Texas address a copy of this order, as well as a copy of defendant's pending motion for summary judgment (document no. 17).  Within **forty-five (45) days of the date of this order**, plaintiff shall file a responsive pleading, with appropriate supporting documentation (i.e., copies of grievances slips, an affidavit, etc.) which:

(1)  demonstrates that he has fully exhausted all available administrative remedies at CCDC relative to his claims; and

(2)  addresses the merits of defendant's motion for summary judgment.

Should plaintiff fail to comply with this order, he risks either dismissal of his claims against all defendants, and/or a possible adverse ruling on the merits of the pending motion (assuming a waiver).

9

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 28, 2004

cc:  John A. Curran, Esq.
     Miguel Espaillat