

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-8-2007

# Jackson v. Ivens

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1977

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Jackson v. Ivens" (2007). *2007 Decisions.* Paper 605.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/605

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-1977

———————

GEORGE A. JACKSON,
                                        Appellant

v.

KEITH IVENS, M.D.; PRISON HEALTH SERVICES, INCORPORATED;
STANLEY TAYLOR; STATE OF DELAWARE; RICK KEARNEY, Warden;
DE DEPT. OF CORRECTIONS

———————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 01-cv-00559)
District Judge:  Honorable Kent A. Jordan

———————

Argued July 10, 2007

Before:  RENDELL and AMBRO, Circuit Judges,
and SHAPIRO, * District Judge.

(Filed: August 8, 2007)

———————


——————————

    *Honorable Norma L. Shapiro, Senior Judge of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

Bruce P. Merenstein
Stephen A. Fogdall     **[ARGUED]**
Schnader Harrison Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA  19103
 *Counsel for Appellant*

William L. Doerler     **[ARGUED]**
White & Williams
1800 One Liberty Place
Philadelphia, PA  19103
 *Counsel for Appellee Prison Health Services*

Stuart B. Drowos     **[ARGUED]**
Department of Justice
820 North French Street
Carvel Office Building
Wilmington, DE  19801
 *Counsel for Appellees Stanley Taylor,*
 *State of Delaware, Richard Kearney and*
 *Department of Corrections*

———————

OPINION OF THE COURT

———————

PER CURIAM.

George Jackson is an inmate at Sussex Correctional Institution in Delaware.  In 2001, Jackson filed an action pursuant to 42 U.S.C. § 1983 against Dr. Keith Ivens and Prison Health Services, Inc. (collectively, "Medical Defendants"), as well as Stanley Taylor (Commissioner of the Delaware Department of Corrections) and the State of

Delaware (collectively, "State Defendants").[1] Jackson alleged that the defendants were deliberately indifferent to his medical needs and had denied him medical care for an improper reason (namely, to save money), both in violation of the Eighth Amendment.

On July 29, 2003, the Medical Defendants moved for summary judgment against Jackson, arguing that he had failed to exhaust his administrative remedies. On March 31, 2004, the District Court ruled that Jackson had failed to exhaust his administrative remedies because the prison grievances he had filed were not related to his Eighth Amendment claims. The District Court granted summary judgment in favor of the Medical Defendants. Jackson appealed and we will reverse the decision by the District Court and remand for further proceedings.[2]

FACTUAL AND PROCEDURAL HISTORY

In June of 1998, while incarcerated at Sussex Correctional Institute, Jackson fell in a prison kitchen. Prison doctors treated him for what they assumed was a back injury

---

[1] Jackson later filed motions adding as State Defendants Rick Kearney, Warden of the Sussex Correctional Institution, and the Delaware Department of Corrections.

[2] We also vacate the Order of the District Court dismissing the State Defendants. Jackson moved at one point to remove the State Defendants as parties, but later moved to withdraw that motion before the District Court ruled on it. After Jackson's case was transferred from one District Judge to another, the initial motion was granted without mention of the later motion to withdraw; this was understandable given the flurry of motions presented by Jackson *pro se*. As we conclude that the District Court should have given effect to Jackson's request to withdraw the motion and that the State Defendants were not prejudiced during this exchange, we vacate the Order of the District Court, noting that the District Court is free on remand to consider any other arguments State Defendants may make for their dismissal.

3

from the fall.  Over the next two years, Jackson suffered from various symptoms including pain and spasms in his back; polyps in his sinuses; pain in his lungs; neurological problems; and swollen lymph nodes.  Jackson attributed these symptoms as being caused by or relating to his fall.

In July of 1999, Jackson reported for sick call due to swollen lymph nodes in his neck.  The nurse concluded that Jackson had an ear infection and gave him drops.  In September of 1999, Jackson complained again of swollen glands and was seen by a doctor at Sussex, but no tests were performed to determine their cause.

On November 18, 1999, Jackson was seen by Dr. Keith Ivens, who was the Prison Health Services' medical director for the Delaware Department of Corrections (DOC).  Prison Health Services was DOC's independent medical provider from June 1998 until June 2000.  Dr. Ivens informed Jackson he could perform an excisional biopsy on the masses on Jackson's neck or he could monitor Jackson for six  more months.  Jackson requested the biopsy.  The biopsy was scheduled for December 16, 1999, but Dr. Ivens did not perform it.  There is no explanation as to why it was not performed.

On April 28, 2000, Jackson filed a grievance in which he described his symptoms; stated that he believed he had a pulmonary infection and cysts on the membrane surrounding his spinal chord; stated that he believed his symptoms were related to the June 1998 fall; requested that he be given proper medication; and requested that a doctor perform a culture on his sinuses.  He also sought an MRI and a CAT scan in order to learn the extent of the infection he believed he had.  The diagnostic procedures Jackson

4

requested in his grievance were not performed. The response by the Medical Grievance Committee stated that there was nothing in his history to suggest an infection, and that "this was explained to the patient in some detail." App. 210. On the space where the form asks "Does Grievant Accept M.G.C. Decision?", the notation "Yes" is checked. App. 210.

On July 26, 2000, Jackson submitted a new grievance in which he stated that he had masses in his neck for over a year; asserted that no culture or diagnostic test had been performed to determine what caused the infection; stated that the failure to properly diagnose the masses caused him to develop infections of the nasal cavity, sinuses, and pharynx; requested a "gram stain and bacterial and fungal culture" be performed on the "infected area of neck[,] sinuses and head," App. 232; and requested that, after the procedures were performed, he be examined by a specialist. Notably, the first three statements listed referred to the delay in receiving treatment, namely, that masses had been in his neck for over a year; that no culture or diagnostic test had been performed to determine their cause; and that infections had resulted from the delay.

Looking to the grievance document itself, it reflects that none of the requests was granted. While the grievance officer's written response is dated July 31, 2000, Jackson did not receive the response until April 21, 2001. The grievance officer replied to Jackson's grievance by stating that a "review of your chart assures me that you are being treated appropriately," and by criticizing Jackson for "diagnosing yourself when you do not have the medical knowledge or background to do so." App. 233. On the space where

5

the form asks "Does Grievant Accept M.G.C. Decision?", neither "Yes" or "No" is checked. On the line immediately below, however, there is a handwritten statement (by whom, unclear): "Resolved by surgery 8/2000." App. 233.[3]

On August 16, 2000, Dr. Ivens performed the lymph node biopsy on Jackson's neck. The biopsy revealed that Jackson suffered from sarcoidosis. "Sarcoidosis is a disease of unknown origin marked by formation of granulomatous lesions that appear especially in the liver, lungs, skin, and lymph nodes. A granuloma, in turn, is a chronic inflammatory lesion characterized by large numbers of cells of various types (macrophages, lymphocytes, fibroblasts, giant cells), some degrading and some repairing the tissues." *Kosiba v. Merck & Co.*, 384 F.3d 58, 61 n.3 (3d Cir. 2004) (citations and quotations omitted). It is potentially life threatening.[4] On August 16, 2001, Jackson filed his § 1983 action.

The District Court granted summary judgment to the Medical Defendants on

---

[3]On August 8, 2000, Jackson submitted another grievance in which he stated that he suffered from severe spasms in his neck and back; had recurring infections and difficulty speaking; had cystic masses in his neck "that has remain for over two years without being biopsied," App. 235; and in which he requested "diagnostic microbiologic testing of potentially infected area (neck, nasal, mouth and throat) to determine the type of microbial pathogens that have caused the recurrent infection in my body." *Id*. The medical department refused to consider the grievance because it was duplicative of Jackson's prior grievances.

[4]On March 25, 2001, Jackson filed a new grievance alleging that the prison doctors had not addressed the extent of his ailment. He requested that he be examined by a specialist to determine if there was any central nervous damage, given his neurological problems. Prison officials referred the grievance to Dr. Ivens, but there is no record of any other action being taken.

March 31, 2004, finding that Jackson had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"). Section 1997e(a) of the PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The District Court noted that the DOC has established, and inmates must follow, administrative procedures for bringing medical grievances. The DOC's medical grievance form, Form #585, contains space for prisoners to describe the "DATE & TIME OF MEDICAL INCIDENT," the "TYPE OF MEDICAL PROBLEM," and the "ACTION REQUESTED BY GRIEVANT." App. 398. Form #585 instructs grievants to write a check mark indicating whether they accept the decision by the medical officer. It also states that "IF THE GRIEVANT DOES NOT AGREE TO THE DECISION OF THE MEDICAL GRIEVANCE COMMITTEE THEY MUST RESPOND, IN WRITING, WITHIN TWO DAYS OF THE RECEIPT OF THE DECISION." App. 233.

Aside from the grievance form itself, DOC grievance procedures, specifically DOC Policy 4.4, similarly provide that following a grievance,

> [M]edical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log form. If the Medical Grievance is resolved, the inmate acknowledges this by his signature on Form #585 Informal Resolution. . . .

7

> Failure to resolve the grievance informally, results in a Medical Grievance Committee Hearing . . . . The IGC and the inmate must be present at this hearing.

App. 387. The procedures also state that nothing else is required if the hearing is completed to the prisoner's satisfaction. "*Resolution closes the case*; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585." *Id*. (emphasis added).[5]

The District Court found that Jackson had not fully exhausted the grievance process via his April 2000 and July 2000 grievances. The District Court found that "neither of the Plaintiff's grievances are related to the allegation in his complaint that the Defendants' [sic] violated his Eighth Amendment right for the delay in performing his surgery." *Jackson v. Ivens*, No. 01-559, 2004 U.S. Dist. LEXIS 5841 at *7 (D. Del. Mar. 31, 2004). The District Court ruled that "[b]ecause Plaintiff's grievances are unrelated to the delay in the performance of surgery, the filing of these grievances do not satisfy the DOC requirements, and Plaintiff has thus failed to initiate any administrative procedures, let alone exhaust his administrative remedies as required by the PLRA." *Id.* at *7-8. On April 6, 2004, Jackson timely appealed the decision to the Third Circuit.

---

5 *See also Jackson v. Ivens*, No. 01-559, 2004 U.S. Dist. LEXIS 5841 at *6-7 (D. Del. Mar. 31, 2004) ("[I]f the hearing decision does not satisfy the inmate, the inmate must complete a MGC Appeal Statement, which is then submitted to the Bureau Grievance Officer ('BGO'). The BGO then recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.") (citations omitted).

8

We review the District Court's conclusion that Jackson failed to exhaust his claim within the prison system for plain error with respect to factual determinations, and *de novo* with respect to legal determinations and applications of law to fact. *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004). Summary judgment is proper, and the moving party is entitled to judgment as a matter of law, where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006).

The Supreme Court and our Court have recently elaborated PLRA's exhaustion requirements. Under *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 2384.

In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), we held that the "determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials." *Id.* at 222. The prison procedures themselves are the proper "yardstick" for exhaustion. *Id.* at 231. Spruill had filed grievances regarding his medical care, but had made no request to the prison system for monetary relief. In his § 1983 suit, Spruill did

9

seek monetary relief. The issue then became whether Spruill should have made such a request based on the grievance form in effect at the time.

We held that "we must look to the rules governing the prison's grievance system to ascertain whether Spruill has procedurally defaulted his claim for monetary relief." *Id.* at 233. The grievance form did not mandate that Spruill put forward a claim for monetary relief; the closest was a statement that the "inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law." *Id.* (quoting grievance form). In sum, "Spruill cannot be said to have failed to follow the regulations--and thus procedurally defaulted--in this respect. Nothing in the Grievance System Policy would have put Spruill on notice that he had to ask for money damages--or any particular form of relief at all." *Id.* at 234.

The District Court granted summary judgment in favor of the Medical Defendants because Jackson's grievances were "unrelated to the delay in the performance of surgery" that is the basis of his § 1983 suit. *Jackson v. Ivens*, No. 01-559, 2004 U.S. Dist. LEXIS 5841 at *7 (D. Del. Mar. 31, 2004). However, the July 2000 grievance specifically charged that "[t]he failure [of] Dr. Burns to properly diagnose and treat the infected cystic mass that has remained in Mr. Jackson's neck, constitutes a deviation from a standard of care. Due to failing timely to diagnose the infection, Mr. Jackson has develope[d] infections . . . . There's no doubt that Mr. Jackson has develop[ed] otologic disease from Dr. Burns['s] misdiagnosis of the infected cystic mass in the neck that has remain[ed] for over a year . . . ." App. 234. We think it clear that the July 2000 grievance relates to the

10

delay alleged in the complaint.

As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA. *See Woodford*, 126 S. Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). Indeed, the PLRA does not require the grievance and complaint to be identical because inmates are required to complete the applicable administrative process (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief. *See Booth v. Churner*, 532 U.S. 731, 736 (2001) (holding that grievance is required except where the "relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint"). Here, the July 2000 grievance raised issues for which the prison system could take responsive action, and indeed in August 2000 a biopsy was finally performed and the sarcoidosis was diagnosed. Those facts were the basis for the § 1983 claim. The grievance procedures were properly exhausted and Jackson's § 1983 action should not have been dismissed.[6]

---

[6]It is clear from the record and the District Court's opinion that Jackson followed and complied with the requisite grievance procedures after submitting the July 2000 grievance, and that there was no procedural default in his not formally appealing the grievance. Taking the procedures as the yardstick, *Spruill*, 372 F.3d at 231, the procedures make clear that the onus was on the prison to hold a hearing if Jackson did not accept the rejection of the July 2000 grievance. Jackson did not receive the last rejection until April 2001; he did not accept it; and no hearing was held. Moreover, Jackson received the relief he sought while the grievance was pending (the grievance form even noted that the issue was resolved by the August surgery), and DOC procedures state that "[r]esolution closes the case." App. 387. Nothing in the procedures states that Jackson

11

Finally, the Medical Defendants contend that Jackson failed to exhaust his claim, principally because he did not name Dr. Ivens in the grievances. This claim also fails. Counsel conceded at oral argument that there was no requirement in the procedures or on the grievance form that the grievant name the particular doctor, but urged that we find this to be an "implied requirement." Tr. of Oral Arg., July 10, 2007. We will not condition exhaustion on unwritten or "implied" requirements. *See Spruill*, 372 F.3d at 234 (finding no procedural default because "[n]othing in the Grievance System Policy would have put Spruill on notice that he had to ask for money damages--or any particular form of relief at all").

## CONCLUSION

Accordingly, we will reverse the grant of summary judgment by the District Court and remand for proceedings consistent with this opinion. We will also vacate the Order of the District Court dismissing the State Defendants.

---

must continue grieving the delay, or file a new grievance, after he has received the desired diagnosis.