BOOTH *v.* CHURNER ET AL.

No. 99–1964.   Argued March 20, 2001—Decided May 29, 2001

Nancy Winkelman argued the cause for petitioner. With her on the briefs were *Joseph T. Lukens* and *Ralph N. Sianni.*

*Gerald J. Pappert,* First Deputy Attorney General of Pennsylvania, argued the cause for respondents. With him on the brief were *D. Michael Fisher,* Attorney General, *John G. Knorr III,* Chief Deputy Attorney General, and *Gwendolyn T. Mosley* and *Calvin R. Koons,* Senior Deputy Attorneys General.

*Irving L. Gornstein* argued the cause for the United States as *amicus curiae* urging affirmance. With him on

the brief were *Acting Solicitor General Underwood,* former *Solicitor General Waxman,* former *Assistant Attorney General Ogden, Barbara L. Herwig,* and *Peter R. Maier.\**

JUSTICE SOUTER delivered the opinion of the Court.

The Prison Litigation Reform Act of 1995 amended 42 U. S. C. § 1997e(a), which now requires a prisoner to exhaust

*\*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union et al. by *David C. Fathi, Elizabeth Alexander, Margaret Winter, Daniel L. Greenberg, John Boston,* and *Alphonse A. Gerhardstein;* for the Association of the Bar of the City of New York by *Michael B. Mushlin* and *William J. Rold;* and for the Brennan Center for Justice et al. by *Robert J. Lukens, Richard P. Weishaupt,* and *Jonathan M. Stein.*

A brief of *amici curiae* urging affirmance was filed for the State of Ohio et al. by *Betty D. Montgomery,* Attorney General of Ohio, *Stephen P. Carney,* Associate Solicitor, and *Todd R. Marti,* Assistant Attorney General, and by the Attorneys General for their respective jurisdictions as follows: *Bill Pryor* of Alabama, *Bruce M. Botelho* of Alaska, *Janet Napolitano* of Arizona, *Mark Pryor* of Arkansas, *Bill Lockyer* of California, *Ken Salazar* of Colorado, *Richard Blumenthal* of Connecticut, *M. Jane Brady* of Delaware, *Robert R. Rigsby* of the District of Columbia, *Robert A. Butterworth* of Florida, *Thurbert E. Baker* of Georgia, *John F. Tarantino* of Guam, *Earl I. Anzai* of Hawaii, *Alan Lance* of Idaho, *James E. Ryan* of Illinois, *Karen Freeman-Wilson* of Indiana, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *Albert B. Chandler III* of Kentucky, *Richard P. Ieyoub* of Louisiana, *G. Steven Rowe* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Jennifer M. Granholm* of Michigan, *Mike Hatch* of Minnesota, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Philip T. McLaughlin* of New Hampshire, *John J. Farmer, Jr.,* of New Jersey, *Patricia A. Madrid* of New Mexico, *Eliot Spitzer* of New York, *Roy Cooper* of North Carolina, *Wayne Stenehjem* of North Dakota, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Sheldon Whitehouse* of Rhode Island, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Paul G. Summers* of Tennessee, *John Cornyn* of Texas, *Mark L. Shurtleff* of Utah, *William H. Sorrell* of Vermont, *Mark L. Earley* of Virginia, *Iver A. Stridiron* of the Virgin Islands, *Christine O. Gregoire* of Washington, and *Gay Woodhouse* of Wyoming.

"such administrative remedies as are available" before suing over prison conditions. The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money. We hold that he must.

## I

Petitioner, Timothy Booth, was an inmate at the State Correctional Institution at Smithfield, Pennsylvania, when he began this action under Rev. Stat. § 1979, 42 U. S. C. § 1983, in the United States District Court for the Middle District of Pennsylvania. He claimed that respondent corrections officers at Smithfield violated his Eighth Amendment right to be free from cruel and unusual punishment by assaulting him, bruising his wrists in tightening and twisting handcuffs placed upon him, throwing cleaning material in his face, and denying him medical attention to treat ensuing injuries. Booth sought various forms of injunctive relief, including transfer to another prison, as well as several hundred thousand dollars in money damages.

The Pennsylvania Department of Corrections provided an administrative grievance system at the time. It called for a written charge within 15 days of an event prompting an inmate's complaint, which was referred to a grievance officer for investigation and resolution. If any action taken or recommended was unsatisfactory to the inmate, he could appeal to an intermediate reviewing authority, with the possibility of a further and final appeal to a central review committee. App. 46–50. While the grievance system addressed complaints of the abuse and excessive force Booth alleged, it had no provision for recovery of money damages.[1]

Before resorting to federal court, Booth filed an administrative grievance charging at least some of the acts of

---

[1] The Commonwealth has since modified its grievance scheme to permit awards of money. App. 60.

abuse he later alleged in his action. *Id.*, at 10–14. He did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief.

Booth's failure to avail himself of the later stages of the administrative process led the District Court to dismiss the complaint without prejudice for failure to exhaust "administrative remedies . . . available" within the meaning of 42 U. S. C. § 1997e(a) (1994 ed., Supp. V). See App. to Pet. for Cert. 38a. The Court of Appeals for the Third Circuit affirmed, 206 F. 3d 289 (2000), rejecting Booth's argument that the statutory exhaustion requirement is inapposite to his case simply because the Commonwealth's administrative process could not award him the monetary relief he sought (money then being the only relief still requested, since Booth's transfer to another institution had mooted his claims for injunctive orders).[2] Although the Third Circuit acknowledged that several other Courts of Appeals had held the exhaustion requirement subject to exception when the internal grievance procedure could not provide an inmate-plaintiff with the purely monetary relief requested in his federal action, see, *e. g., Whitley* v. *Hunt,* 158 F. 3d 882 (CA5 1998); *Lunsford* v. *Jumao-As,* 155 F. 3d 1178 (CA9 1998); *Garrett* v. *Hawk,* 127 F. 3d 1263 (CA10 1997), the court found no such exception in the statute, 206 F. 3d, at 299–300; accord, *Freeman* v. *Francis,* 196 F. 3d 641 (CA6 1999); *Alexander* v. *Hawk,* 159 F. 3d 1321 (CA11 1998). We granted certiorari to address this conflict among the Circuits, 531 U. S. 956 (2000), and we now affirm.

---

[2] There is some uncertainty, probably stemming in part from the ambiguity of Booth's *pro se* filings in District Court, as to whether all of Booth's claims for relief other than money damages became moot when he was transferred. See Brief for Petitioner 12, n. 7; Brief for United States as *Amicus Curiae* 10, n. 2. We assume for present purposes that only Booth's claims for money damages remain.

## II

In the aftermath of the Prison Litigation Reform Act of 1995,[3] 42 U. S. C. § 1997e(a) (1994 ed., Supp. V) provides that

> "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The meaning of the phrase "administrative remedies . . . available" is the crux of the case, and up to a point the parties approach it with agreement. Neither of them denies that some redress for a wrong is presupposed by the statute's requirement of an "available" "remed[y]"; neither argues that exhaustion is required where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.[4] The dispute here, then, comes down to whether or not a remedial scheme is "available" where, as in Pennsylvania, the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress.

In seeking the congressional intent, the parties urge us to give weight to practical considerations, among others, and at first glance Booth's position holds some intuitive appeal. Although requiring an inmate to exhaust prison grievance procedures will probably obviate some litigation when the administrative tribunal can award at least some of the relief sought, Booth argues that when the prison's process simply cannot satisfy the inmate's sole demand, the odds of keeping

---

[3] 110 Stat. 1321, as renumbered and amended.

[4] Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust. The parties do not dispute that the state grievance system at issue in this case has authority to take some responsive action with respect to the type of allegations Booth raises.

the matter out of court are slim. See Reply Brief for Petitioner 16. The prisoner would be clearly burdened, while the government would obtain little or no value in return. The respondents, however, also have something to say. They argue that requiring exhaustion in these circumstances would produce administrative results that would satisfy at least some inmates who start out asking for nothing but money, since the very fact of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket. And one may suppose that the administrative process itself would filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding. Although we have not accorded much weight to these possibilities in the past, see *McCarthy* v. *Madigan*, 503 U. S. 140, 155–156 (1992), Congress, as we explain below, may well have thought we were shortsighted. See *infra*, at 739–741. In any event, the practical arguments for exhaustion at least suffice to refute Booth's claim that no policy considerations justify respondents' position. The upshot is that pragmatism is inconclusive.

Each of the parties also says that the plain meaning of the words "remedies" and "available" in the phrase "such administrative remedies . . . available" is controlling. But as it turns out both of them quote some of the same dictionary definitions of "available" "remedies," and neither comes up with anything conclusive. Booth says the term "remedy" means a procedure that provides redress for wrong or enforcement of a right, and "available" means having sufficient power to achieve an end sought. See Brief for Petitioner 15–16 (citing Webster's Third New International Dictionary 150, 1920 (1993) (defining "remedy" as "the legal means to recover a right or to prevent or obtain redress for a wrong" and "available" as "having sufficient power or force to achieve an end," "capable of use for the accomplishment of a purpose," and that which "is accessible or may be ob-

tained")). So far so good, but Booth then claims to be able to infer with particularity that when a prisoner demands money damages as the sole means to compensate his injuries, a grievance system without that relief offers no "available" "remed[y]." The general definitions, however, just do not entail such a specific conclusion.

It strikes us that the same definitions get the respondent corrections officers and their *amicus* the United States closer to firm ground for their assertion that the phrase "such administrative remedies as are available" naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands. See Brief for Respondents 21. The United States tracks Booth in citing Webster's Third New International Dictionary to define "remedy" as "the legal means to recover a right or to prevent or obtain redress for a wrong" and "available" as "capable of use for the accomplishment of a purpose." Webster's Third New International Dictionary, *supra*, at 150, 1920. But this exercise in isolated definition is ultimately inconclusive, for, depending on where one looks, "remedy" can mean either specific relief obtainable at the end of a process of seeking redress, or the process itself, the procedural avenue leading to some relief. See Black's Law Dictionary 1296 (7th ed. 1999) (defining "remedy" alternatively as "[t]he means of enforcing a right or preventing or redressing a wrong," or as "REMEDIAL ACTION. . . . Cf. RELIEF").

We find clearer pointers toward the congressional objective in two considerations, the first being the broader statutory context in which "available" "remedies" are mentioned. The entire modifying clause in which the words occur is this: "until such administrative remedies as are available are exhausted." The "available" "remed[y]" must be "exhausted" before a complaint under § 1983 may be entertained. While the modifier "available" requires the possibility of some relief for the action complained of (as the

parties agree), the word "exhausted" has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered. It would, for example, be very strange usage to say that a prisoner must "exhaust" an administrative order reassigning an abusive guard before a prisoner could go to court and ask for something else; or to say (in States that award money damages administratively) that a prisoner must "exhaust" his damages award before going to court for more. How would he "exhaust" a transfer of personnel? Would he have to spend the money to "exhaust" the monetary relief given him? It makes no sense to demand that someone exhaust "such administrative [redress]" as is available; one "exhausts" processes, not forms of relief, and the statute provides that one must.

A second consideration, statutory history, confirms the suggestion that Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible. Before § 1997e(a) was amended by the Act of 1995, a court had discretion (though no obligation) to require a state inmate to exhaust "such . . . remedies as are available," but only if those remedies were "plain, speedy, and effective." 42 U. S. C. § 1997e(a) (1994 ed.). That scheme, however, is now a thing of the past, for the amendments eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be "plain, speedy, and effective" before exhaustion could be required.

The significance of deleting that condition is apparent in light of our decision two years earlier in *McCarthy* v. *Madigan, supra.* In *McCarthy,* a federal inmate, much like Booth, sought only money damages against federal prison officials, and the Bureau of Prison's administrative procedure offered no such relief. Although § 1997e(a) did not at that time apply to suits brought against federal officials, the government argued that the Court should create an analogous

exhaustion requirement for *Bivens* actions. See *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971). It proposed § 1997e(a) as a model, on the assumption that the provision required exhaustion by those seeking nothing but money damages even when money was unavailable at the administrative level. We understood the effect of § 1997e(a) to be quite different, however. See 503 U. S., at 149–151. In holding that exhaustion was not required, we reasoned in part from the language of § 1997e(a) that required an "effective" administrative remedy as a precondition to exhaustion. *Id.*, at 150. When a prisoner sought only money damages, we indicated, only a procedure able to provide money damages would be "effective" within the meaning of the statute. *Ibid.* ("[I]n contrast to the absence of any provision for the award of money damages under the Bureau's general grievance procedure, the statute conditions exhaustion on the existence of 'effective administrative remedies'"); see also *id.*, at 156 (REHNQUIST, C. J., joined by SCALIA and THOMAS, JJ., concurring in judgment) ("[I]n cases . . . where prisoners seek monetary relief, the Bureau's administrative remedy furnishes no effective remedy").

When Congress replaced the text of the statute as construed in *McCarthy* with the exhaustion requirement at issue today, it presumably understood that under *McCarthy* the term "effective" in the former § 1997e(a) eliminated the possibility of requiring exhaustion of administrative remedies when an inmate sought only monetary relief and the administrative process offered none. It has to be significant that Congress removed the very term we had previously emphasized in reaching the result Booth now seeks, and the fair inference to be drawn is that Congress meant to preclude the *McCarthy* result.[5] Congress's imposition

---

[5] This inference is, to say the least, also consistent with Congress's elimination of the requirement that administrative procedures must satisfy certain "minimum acceptable standards" of fairness and effectiveness before inmates can be required to exhaust them, and the elimination of

of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms.

Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.[6]  Cf. *McCarthy*, 503 U. S., at 144 ("Where Congress specifically mandates, exhaustion is required").  We accordingly affirm the judgment of the Third Circuit.

*It is so ordered.*

---

courts' discretion to excuse exhaustion when it would not be "appropriate and in the interests of justice."  Compare 42 U. S. C. § 1997e(a) (1994 ed., Supp. V) with 42 U. S. C. § 1997e(a) (1994 ed.).

[6] That Congress has mandated exhaustion in either case defeats the argument of Booth and supporting *amici* that this reading of § 1997e (1994 ed., Supp. V) is at odds with traditional doctrines of administrative exhaustion, under which a litigant need not apply to an agency that has "no power to decree . . . relief," *Reiter* v. *Cooper*, 507 U. S. 258, 269 (1993), or need not exhaust where doing so would otherwise be futile.  See Brief for Petitioner 24–27; Brief for Brennan Center for Justice et al. as *Amici Curiae*.  Without getting into the force of this claim generally, we stress the point (which Booth acknowledges, see Reply Brief for Petitioner 4) that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.  See *McCarthy* v. *Madigan*, 503 U. S. 140, 144 (1992); cf. *Weinberger* v. *Salfi*, 422 U. S. 749, 766–767 (1975).  Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.