In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1973

Marcus Dixon,

Plaintiff-Appellant,

v.

Thomas Page, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 97-323-GPM--G. Patrick Murphy, Chief Judge.

Argued December 6, 2001--Decided May 28, 2002


   Before Cudahy, Easterbrook and Evans,
Circuit Judges.

   Cudahy, Circuit Judge.  In this appeal,
Marcus Dixon argues that the district
court erred in dismissing without
prejudice Counts II and III of his
complaint because he failed to exhaust
his administrative remedies. We affirm.

I.

   Because Dixon's complaint was dismissed
under Rule 12(b)(6), all statements of
fact in the complaint are taken as true
and all reasonable inferences must be
drawn in favor of Dixon. Massey v.
Wheeler, 221 F.3d 1030, 1034 (7th Cir.
2000). Dixon, a former Illinois prisoner,
now released, was an inmate at Menard
Correctional Center ("Menard"). Upon
arriving at Menard on December 13, 1995,
he immediately asked to be placed in
segregation because of a "hit" placed
upon him by a gang called the Vice Lords.
On January 8, 1996, Dixon was beaten up
by three members of the Vice Lords after
the prison ended a lockdown that had
prevented prisoners from moving about
outside their cells. The failure of
prison officials to prevent this beating
formed the basis of Count I of Dixon's
complaint.

   In Count II of his complaint, Dixon
asserts that prison officials failed to
protect him from assault and harassment

by several inmates. He alleged that after the January 8, 1995 incident, he asked for protection again and was moved to the protective custody unit on Gallery 7. However, Dixon found that he was also in danger in Gallery 7 because there were Vice Lords there, who frequently threatened him. Despite repeatedly asking for assistance from prison officials, he received none. On February 22, 1996, Dixon was stabbed by Tyrone Jackson, a Vice Lord who had been placed in the cell with him. Dixon wrote several more letters asking for help but continued to receive no assistance. On May 28, 1996, Dixon was attacked and struck by another inmate, and he continued to be harassed by various inmates. He filed written grievances after each incident. In July, in response to his grievances, the Administrative Review Board told Dixon to contact his counselor. Dixon made repeated attempts to obtain a transfer to another prison through his counselor and through the other defendants but was told that he was ineligible at that time.

In Count III of his complaint, Dixon alleged that he had been beaten by prison officials in retaliation for his filing of an administrative complaint against these same officials. He filed several more grievances and was subsequently granted a transfer to another prison. However, he was never transferred.

On April 16, 1997, Dixon filed an initial two-count complaint in federal court under sec. 1983. He filed an amended complaint on February 23, 1998, adding Count III, and the case was assigned to Magistrate Judge Proud. The defendants moved for dismissal on the ground that Dixon had failed to exhaust his administrative remedies. Dixon then filed a second amended complaint adding that he had filed written grievances on specified dates. Magistrate Judge Proud issued an order and recommendation that the motion to dismiss be denied. This order and recommendation was approved and adopted by the district court in March 1999.

In August 1999, the defendants asked the district court (and by implication, Magistrate Judge Proud) to reconsider the order in light of Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532 (7th Cir. 1999), which held that

administrative exhaustion was a precondition even for a suit seeking money damages. Upon reconsideration, Magistrate Judge Proud recommended that the defendants' motion to reconsider be granted. Specifically, Judge Proud recommended the dismissal of most of Count II and all of Count III for failure to exhaust administrative remedies. The district court then adopted this new order and recommendation, and most of Count II and all of Count III were dismissed without prejudice. In October 2000, a trial was held on all of the remaining claims. At the close of Dixon's case-in- chief, the defendants moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. The court granted the motion from the bench and later issued a written order outlining its reasoning. Dixon now appeals from the dismissal of most of Count II and all of Count III of his second amended complaint.

II.

  Dixon argues that we have appellate jurisdiction under 28 U.S.C. sec. 636(c)(3). However, that provision applies only to appeals from a final judgment of a magistrate judge, not to appeals from a final judgment of a district court. Here, the dismissal was by a district court, and sec. 636(c)(3) does not apply. Instead, we have appellate jurisdiction over final judgments of a district court under 28 U.S.C. sec. 1291. Although the counts in question were dismissed without prejudice, and on that basis, narrowly viewed, the dismissals would not be appealable, it is clear that there is nothing that Dixon can do to amend his complaint "that would permit it to go forward." Larkin v. Galloway, 266 F.3d 718, 721 (7th Cir. 2001). The reason is that since Dixon is not currently a prisoner, the prison grievance system is not available to him, and he cannot exhaust his administrative remedies. He therefore cannot cure the defect in his complaint on which the district court based its dismissal of Counts II and III. Thus, under the circumstances, the dismissal of his claims is final for purposes of appellate review. See id. ("If it is clear, for example, that the plaintiff will not be able to amend her complaint, the dismissal [without

prejudice] is final for purposes of appellate review."); see also Ray v. Kertes, 285 F.3d 287, 291 (3d Cir. 2002) (exercising appellate jurisdiction when "both parties agree that the time is long past for [the inmate-appellant] to pursue his normal administrative remedies [preventing him from] curing the defect in his complaint on which the District Court based its dismissal")./1 This court reviews a dismissal of a com-plaint under Rule 12(b)(6) de novo. Massey v. Helman, 259 F.3d 641, 645 (7th Cir. 2001).

A.

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. sec. 1997e(a) (1996). Exhaustion of administrative remedies, as required by sec. 1997e, is a condition precedent to suit. See Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999). sec. 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 992 (2002).

Dixon first argues that he does not have to exhaust his administrative remedies because it would be futile for him to do so when he is seeking money damages, and he cannot be awarded money damages in the administrative system. However, this precise argument has been rejected by the Supreme Court in its recent decision in Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (2001), which was issued the day before Dixon filed his appeal. Booth held that administrative exhaustion was required even if the process could not result in a prisoner's desired form of relief.

B.

Dixon also argues that sec. 1997e does not apply to him because he is no longer a prisoner within the meaning of sec. 1997e. sec. 1997e applies only to prisoners, and a plaintiff's status as a "prisoner" is to be determined as of the time he brought the lawsuit. Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998). Thus, when Dixon filed his complaint, he was a prisoner, who had access to Menard's administrative grievance system. That he is no longer a prisoner at the time of this appeal does not excuse him from the exhaustion requirement since exhaustion is a precondition to the filing of a complaint in federal court. See Perez, 185 F.3d at 535. Therefore, sec. 1997e still applies to this lawsuit.

C.

Finally, Dixon argues that he properly exhausted his administrative remedies when he filed his many grievances in the administrative system. But, in reviewing the record, we conclude that Dixon did not exhaust his administrative remedies.

The Illinois Department of Corrections has a three-step grievance procedure. See 20 Ill. Admin. Code sec. 504.800 et seq. (1998) (detailing grievance procedure). If a prisoner has a grievance or complaint, he should first go to a counselor. 20 Ill. Admin Code sec. 504.810 (1998). If no relief is provided by the counselor, a prisoner can then file a written grievance. Id. Finally, if the written grievance is dismissed, he can appeal to the Director of the Department. Id. There is also a statute of limitations requiring that written grievances be filed within six months of the incident or problem complained of. Id. If a written grievance is not filed within that period, it will be dismissed as untimely. Id. However, an untimely grievance can still be considered if the inmate can show that there is good cause for the delay. Id.

Dixon had complained to his counselor and filed four written grievances in connection with the dismissed claims in Count II of his complaint, but he was denied relief with respect to all four grievances. With respect to three of those grievances, Dixon never appealed the denial of relief to the Director (the

next step in the grievance process). As to the fourth grievance, although Dixon eventually exhausted his administrative remedies, he did not exhaust them until after he had filed his complaint in federal court. This fourth grievance thus does not support his federal complaintbecause exhaustion of administrative remedies is a precondition to the filing of a sec. 1983 suit by a prisoner. See Perez, 185 F.3d at 535 (holding that exhaustion of administrative remedies is a precondition to suit). Therefore, three of his claims relating to Count II were not pursued to the final step of the administrative process and, as to the fourth, the process was not completed before the sec. 1983 complaint was filed. The requirements of sec. 1997e were therefore not met and those claims were properly dismissed.

Because Dixon exhausted his administrative remedies with respect to his claims in Count I and also exhausted his administrative remedies with respect to one claim in Count II, Dixon received a trial on those claims. Now, he presents a sort of single source theory--that the exhaustion of those claims preserves the unexhausted claims in Count II because all of his claims arise ultimately from the failure of the prison system to protect him from the Vice Lords. Essentially, Dixon is arguing that all of his claims were really one claim. This argument was raised for the first time in Dixon's reply brief. As a general rule, we do not consider arguments raised for the first time in a reply brief. See Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1987) ("We will not consider argument raised for the first time in the appellant's reply brief."). Even if we were to consider the argument, it has no merit. If all of the claims in Count I and Count II were one claim, then that one claim was decided against Dixon at the trial on the exhausted claims in his complaint. Hence, Dixon is not entitled to another trial on the unexhausted claims in Count II. On the other hand, if the unexhausted claims were separate claims, then Dixon failed to meet the requirements of sec. 1997e as to those claims. In either case, the dismissal of the unexhausted claims in Count II of his complaint may be affirmed.

With respect to his claims in Count III that prison officials beat him, Dixon filed two grievances. He did not appeal the dismissal of the first grievance to the Director. Thus, as we have indicated, Dixon failed to exhaust his administrative remedies with respect to that grievance and that claim was properly dismissed under sec. 1997e. Dixon was granted relief of sorts on his second grievance, in which he sought a transfer. However, although he was granted a transfer, Dixon was never in fact transferred. The state argues that Dixon did not exhaust this second grievance because he should have done something administratively to compel the prison to meet its obligation to transfer him. The state suggested that Dixon could have filed another grievance requesting the transfer. The state asserts that, even if the grievance were deemed untimely, Dixon could have shown good cause for his delay in filing the grievance.

Requiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic. Although the time spent in exhausting administrative remedies is tolled for purposes of limitations on filing a federal complaint, see Johnson v. Rivera, 272 F.2d 519, 522 (7th Cir. 2001) (holding that "in the ordinary case, a federal court relying on the Illinois statute of limitations in a sec. 1983 case must toll the limitations period while a prisoner completes the administrative grievance process"), this would be cold comfort to a prisoner caught in some never-ending cycle of grievances. For, if a prisoner who wins on his initial grievance must file one further grievance to get practical relief, what is to prevent the prison system from repeatedly failing to follow through and requiring the prisoner to endlessly seek a real resolution? During oral argument, counsel for the state conceded that any intentional pursuit of such a scenario by state officials with the aim of frustrating the process could not be tolerated. But counsel represented that under the grievance process in Illinois, Dixon could appeal directly to the Director after waiting for thirty days to be transferred, thus bypassing the initial steps required for the filing

of a new grievance. See 20 Ill. Admin. Code sec. 504.850(a) (1998) (stating that "if after receiving a response . . ., the committed person still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after receipt of the response"). If state counsel's representation is reliable, sec. 1997e requires that Dixon continue to pursue the grievance process and appeal to the Director the prison system's failure to transfer him.

In Pozo v. McCaughtry, 286 F.3d 1022, 2002 WL 596190 (7th Cir. 2002), we held that a prisoner, in order to satisfy the exhaustion requirement of sec. 1997e, must complete the administrative process "by following the rules the state has established for that process." Literally, this language might seem to control the present case since the state rules governing the grievance process may be construed to require a direct appeal to the Director if relief was granted in theory but not promptly translated into practice. Under Pozo, sec. 1997e may require that this course be pursued, provided the ultimate result is not practical frustration of Dixon's remedy. For present purposes, we will adopt this approach, subject to the reservations that we have noted. Therefore, interpreting sec. 1997e in the manner generally indicated by Pozo seems appropriate, provided that there is a "possibility of some relief for the action complained of" by Dixon. Booth v. Churner, 532 U.S. at 731, 121 S. Ct. at 1824.

In addition, requiring Dixon to appeal directly to the Director would furnish the Director with an opportunity to learn of possible infirmities in the prison grievance system and to correct any such infirmities--one of the purposes of sec. 1997e. See Porter v. Nussle, 534 U.S. 516, 122 S. Ct. at 988 (stating that the exhaustion requirement might lead to improvement in the prison administrative system). On the other hand, if counsel's representation does not point accurately to an avenue of prompt relief (for example, if even a direct appeal to the Director would prove futile), Dixon would have shown that administrative remedies were not really available in the Illinois

prison system. This would follow from the fact that there was no "possibility of relief" in a situation in which practical resolution of a grievance was indefinitely deferred. But that has not yet been shown to be the situation here, and we have been assured that prompt relief in fact as well as in principle would have been available by appeal to the Director. Therefore, the dismissal of Dixon's claims in Count III for failure to exhaust his administrative remedies may be affirmed.

III.

For the foregoing reasons, we AFFIRM the judgment of the district court dismissing Dixon's claims for failure to exhaust administrative remedies.

FOOTNOTES

/1 This, of course, is not to say that (if the statute of limitations and other potential obstacles permit) Dixon might not file a new complaint under sec. 1983, with respect to which administrative exhaustion presumably would not be required since Dixon is no longer a prisoner. See Kerr v. Puckett, 138 F.3d 321 (7th Cir. 1998) (holding that sec. 1997e(e) applies only to prisoners).