REINHARDT, Circuit Judge,
concurring in part, and dissenting in part:
Because neither Brown nor Hall exhausted all of the administrative relief that was available through the California Department of Corrections’ grievance process and because Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), requires that in such circumstances their complaints be dismissed, I respectfully concur as to Hall and dissent as to Brown.
Notwithstanding the majority’s attempt to distinguish Brown’s case from Hall’s, the factual and legal similarities between these two cases are overwhelming. Hall and Brown were inmates at the same prison at the time of the alleged assaults. In both cases, the plaintiffs were physically assaulted; they were pepper sprayed; and they suffered injuries for which both sought and allegedly failed to receive proper medical treatment. Both plaintiffs sought relief for their grievances through the Department of Corrections’ administrative appeals process; both sought com *944 pensation for their injuries and the alleged violations of their rights.
After their appeals were received by the appropriate officials, both inmates bypassed the informal and formal levels and both appeals were denied at the first level. At the second level, both were notified that their complaints of staff misconduct would be investigated, but that as inmates they would be informed only of the conclusion of the investigation. Although Brown’s appeal was “partially granted” and Hall’s appeal was “denied” at the second level, the majority agrees that the Hall label is erroneous. See Maj. op. at 942 n. 16. Hall’s appeal should also have been labeled “partially granted.” Although the majority opinion states that the second level Brown memorandum “did not counsel that any further review [was] available,” Maj. op. at 937, Brown, like Hall, was in fact notified on his appeal form, that if he was dissatisfied with the second level response, he could appeal to the Director’s Level for review. Given these similarities, I simply cannot see how the majority can dispose of these cases differently under Booth.[1]
The issue in Booth was “whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money.” 532 U.S. at 733, 121 S.Ct. 1819. The Court explained that, as with the two cases before us, “[t]he meaning of the phrase ‘administrative remedies ... available’ [in 42 U.S.C. § 1997e(a) ] is the crux of the case ... The dispute ... comes down to whether or not a remedial scheme is ‘available’ where ... the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress.” Id. at 736, 121 S.Ct. 1819 (emphasis added).
In Booth, the Court defined available relief broadly. “[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.” Id. at 741 n. 6, 121 S.Ct. 1819. The Court specifically rejected any attempt to “read futility or other exceptions” into the requirement of exhaustion. Id. It held that as long as some relief is available through the administrative process, re *945 gardless of whether it is the relief a prisoner seeks, the prisoner must exhaust the process. The Court said that as long as the Department’s grievance system “has authority to take some responsive action,” relief is available. Id. at 736 n. 4, 121 S.Ct. 1819.
Although the Court did not specify precisely what constitutes available relief, it noted the argument that Congress must have accorded weight to the non-compensatory benefits of total exhaustion:
[R]equiring exhaustion in [ ] circumstances [where the prison’s process cannot satisfy the inmate’s sole demand] would produce administrative results that would satisfy at least some inmates who start out asking for nothing but money, since the very fact of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket. And one may suppose that the administrative process itself would filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfind-ing.
Id. at 737, 121 S.Ct. 1819. Under this view, even when a prisoner requests only relief that is not available through the administrative process, the threshold for determining what constitutes available relief is so low that “the very fact of being heard and prompting administrative change” may be sufficient in itself to require exhaustion of the administrative process. See id. Given that the mere existence of an additional hearing or process may be sufficient to constitute an available administrative remedy under Booth, any question as to whether there are in fact other types of available relief is inconsequential. (See list of relief available for Brown, infra Dissent at 945). All that the defendant need establish generally is that an additional hearing was available. The key to Booth is that the Court held explicitly that for relief to be “available” in the administrative process it need not be “effective”; nor need it be desired by the prisoner. As long as some administrative action can be ordered, the prisoner must exhaust the process.
I believe that Booth squarely controls the outcome of both appeals here. Brown, like Booth, was an alleged victim of a prison guard assault and was allegedly denied adequate medical treatment. Brown, like Booth, was clear in his request for relief: “I respectfully request to be compensated for these abuses, and blatant disregard for my constitutional rights.” Brown, like Booth, sought compensation for his physical injuries. Moreover, Brown, like Hall, was informed that further relief was available at the time the second level decision was communicated to him. Brown, like Hall, was told that he had a right to appeal to the third level. However, Brown admits that he chose not to appeal to the third level because of the delay in the administrative appeals process. Although we may assume that Brown could not have requested any further personnel investigation with respect to Valoffs conduct and that he could not have sought greater discipline of Valoff, he unquestionably might have received some relief for himself at the Director’s level had he done what he was advised to do— file an appeal with the Director. For example, Brown might have received the medical treatment that had been withheld, and/or a transfer to a different correctional facility away from his “persecutor,” and/or a change in the prison’s pepper spray policy, and/or the adoption of new disciplinary procedures or regulations governing prisoner’s rights, and/or correction of his prison records and/or the restoration of good-time credits, and/or an apology from the Warden. There is no question that had *946 Brown appealed he would have received an opportunity “to be heard and to prompt administrative change.” Booth, 532 U.S. at 737, 121 S.Ct. 1819. Each of the remedies mentioned constitutes available relief that Brown could have received at the third level of the administrative appeals process. In light of Booth, I believe that the majority opinion is simply incorrect in its statement that no further relief was available to Brown.
My colleagues suggest that there are circumstances in which a prisoner need not proceed through the whole administrative process because no relief would be available. I agree. There are two principal examples that I would offer, neither of which is applicable here. The first situation in which a prisoner may be excused from exhausting all steps in the process occurs when the prisoner’s request is fully granted prior to the final level of the administrative process. See Abney v. McGinnis, 380 F.3d 663 (2d Cir.2004); Ross v. County of Bernalillo, 365 F.3d 1181, 1187 (10th Cir.2004); Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir.2002). The majority relies on these cases for the conclusion that “[t]he other circuits that have considered whether a prisoner continues to have an exhaustion obligation once it is clear that no further relief is available have agreed with our understanding that Booth decides this question in the negative.” Maj. op. at 935. To the contrary, those cases hold only that an inmate need not continue to exhaust the administrative process once his administrative appeal has been fully granted. See Abney, 380 F.3d at 665 (Abney’s request for orthopedic footwear was fully granted); Ross, 365 F.3d at 1187 (Ross’ request for shower mats was fully granted); Dixon, 291 F.3d at 490-91 (Dixon’s request for a transfer was fully granted). These cases are inap-posite. At the second level, Brown’s request was “partially granted” but, more important, was necessarily also partially denied. The denial pertained to the part of the request that sought a remedy for the violation of Brown’s rights. No court has held after Booth that a prisoner whose appeal is denied or partially denied is excused from exhausting the administrative process if that process could offer him some additional relief. Here, there is no question that the administrative process could have afforded Brown and Hall further relief — even though that relief was not the relief they requested. The institution of an investigation of a guard is hardly all the available relief when a prisoner’s constitutional rights have been violated. In fact, such a personnel proceeding is not a “remedy” at all. It does not provide relief to the prisoner. It is simply the state’s internal administration of its own personnel policies for its own benefit.
The second circumstance in which relief would be unavailable occurs when the prisoner is explicitly told, or the regulations make it plain, that there is no further relief available to him. No such statement was made to Brown or Hall. Nor do the regulations so provide. Although Brown was told that monetary compensation was “beyond the scope of the appeals process” and that he would not be informed of any disciplinary action taken against Valoff, he was at no time told that the administrative appeals process could offer him no further relief. In fact, there is no reason he could not have been afforded various forms of relief. See supra Dissent at p. 946. The prison officials certainly had the authority to do so.[2]
*947 Relying on Administrative Bulletin 98/10, the majority concludes that because Brown alleged staff misconduct, his grievance was categorized as a “Staff Complaint” and that the issue of staff misconduct is investigated separately and apart from the ordinary appeal process. I do not dispute this conclusion. The Administrative Bulletin does appear to create a separate and collateral administrative procedure for allegations of staff misconduct for the administration of its own personnel proceedings. See Admin. Bulletin 98/10 (“ALL complaints which allege any misconduct by a staff member shall be logged by the appeals coordinators as a Staff Complaint, Category 7.”).[3] Nevertheless, I disagree with the majority’s conclusion that “all indications are that on a third level appeal, no one would be listening— because the investigation and consideration of the grievance had been directed, in their entirety, to the staff complaint process.” Maj. op. at 941. At no time was Brown informed that the Department “was not going to listen” to his medical complaints or even to his allegations of physical mistreatment and violations of his constitutional rights. Requests for relief arising out of those complaints might have been denied at the third level, but the prison authorities would have been required to listen to the complaints and the appeals might well have resulted in some remedial response, even if one that did not satisfy Brown. Because Brown was informed that he could be afforded no further relief with respect to any request to have Valoff investigated or disciplined, the Staff Complaint portion of his grievance was granted; but his entire appeal was only “partially granted,” as no administrative relief directly benefitting him or addressing the violations of his rights or the injuries he incurred was afforded.
The basic problem with the majority’s approach is that its interpretation of Administrative Bulletin 98/10 would lead to the conclusion that the administrative appeals process is unavailable in California for all complaints of mistreatment of prisoners by prison staff. Yet, that is likely the principal reason for the existence of the administrative appeals process. The appeal form used by both Brown and Hall begins, “You may appeal any policy, action or decision which has a significant adverse affect upon you.” (Emphasis added). This would clearly appear to include the deprivation of a prisoner’s constitutional rights by prison officials. However, under the majority’s view, when a prisoner’s grievance identifies improper actions by prison guards or other officials, it must be treated as a “Staff Complaint” and removed from the normal appeals process. According to the majority’s view of the process, when prisoners complain that their constitutional rights have been violated by the prison staff, they will simply be told that an investigation will be conducted and that they will later learn of its conclusion, although not of the specific actions *948 taken, if any. Under that view, prisoners would have no opportunity within the ordinary administrative appeals process to have their complaints of mistreatment, including constitutional deprivations, considered and remedied.
My view is to the contrary. I believe that, under the California regulations, a personnel complaint is separated out and is treated as being of no direct consequence to the prisoner or, put differently, as affording no direct relief to the prisoner. Such a complaint is viewed as initiating an internal state process, part of the state’s own personnel procedures. That is hardly the end of the matter, however. The prisoner’s grievance concerning his abuse or mistreatment and the questions as to what relief, if any, should be afforded him as a result of the violation of his rights continue to proceed within the administrative appeals process, regardless of what happens on the separate track with the personnel complaint. Thus, the prisoner is, under my view of the process, afforded an opportunity to obtain a remedy for the constitutional violation he suffered. His use of the administrative process is not terminated simply because prison officials are investigating a personnel complaint. It is not simply a question of whether a prisoner must take the third appeal as Brown failed to do. The personnel complaint could as easily be filed directly, or segregated out, at the very first step of the process or even earlier. See Admin. Bulletin 98/10 at ¶ 4. In such case, under the majority’s theory, the entire appeals process would be unavailable with respect to the entire complaint, not just with respect to the personnel proceedings; and the prisoner could proceed directly to the court in all cases.
The question the majority’s decision poses is fundamental. Is the administrative appeals process limited to complaints by prisoners about general policies and other matters that do not involve the deprivation of prisoners fundamental rights by prison staff? I hardly think so. I think that a complaint regarding the deprivation of such rights is precisely the type of complaint the appeals process is designed to encompass.
Once the personnel aspect of Brown’s complaint is removed to its separate track, the complaint is remarkably similar to Booth’s. Both prisoners sought monetary relief; indeed, such was the only relief requested in each case. Brown was told at step two that the “monetary compensation” he sought was “beyond the scope of the appeals process.” The Booth Court expressly determined that the fact that monetary compensation is “beyond the scope of the appeals process” is inconsequential to the prisoner’s obligation to continue to pursue his appeal. See Booth, 532 U.S. at 733, 736-38, 121 S.Ct. 1819. The Booth Court clearly held that, when the administrative process can offer any relief, prisoners must continue to exhaust administrative procedures regardless of the relief requested, regardless of the relief offered, and regardless of the futility of exhaustion. See Booth, 532 U.S. at 741, 741 n. 6, 121 S.Ct. 1819. As I see it, Booth controls our resolution of these appeals. Although I find Booth extremely troubling and would have decided it differently, it is precedent and it is clearly applicable; and it is binding on us.
In sum, Brown was informed that he could appeal the second level decision to the director’s level. Apart from the fact that California removes from the normal appellate process the portion of the case that pertains to disciplinary action against the prison staff (including any disciplinary investigation), Brown’s case is identical to Booth’s. Both were allegedly assaulted by prison guards. Brown’s request for relief *949 is no different than Booth’s. Both limited their requests for relief to compensation. Both are required to exhaust the administrative process, even if that process is futile. See Booth, 532 U.S. at 741 n. 6, 121 S.Ct. 1819. So, too, is Hall. Because neither Brown nor Hall exhausted all of the administrative relief that was available through the Department of Corrections’ administrative appeals process, Booth requires that both of their complaints be dismissed. I therefore respectfully concur as to Hall and dissent as to Brown.

. Both Brown and Hall’s complaints resulted in the treatment of their grievances as "Staff Complaints.” Both were referred for investigation of the officers' conduct. The majority suggests that Hall's grievance was different in that he also complained that he did not receive adequate medical care and that his property was taken. See Maj. op. at 941. First, notwithstanding the separation under the administrative procedures of the staff complaint (which I will discuss later), both Brown and Hall were left with complaints that they had been deprived of their rights by virtue of the use of excessive force. The complaints were not fully remedied by the institution of personnel proceedings with respect to the offending guards. Other relief could have been afforded to the prisoners had they continued with the administrative appeals process. Second, as to the statement that "Hall also complained that he did not receive adequate medical care ... and that his property was taken,” that fact is of no consequence. Brown too complained about inadequate medical care. He alleged that he attempted to get medical appointments regarding the injury he suffered, but that each time they were cancelled and (false) excuses were made that his applications were not received. Surprisingly, the majority refuses to acknowledge Brown’s complaint about his medical treatment because it is not separately stated. See Maj. op. at 941 n. 15. We do not ordinarily read a prisoner’s handwritten submission of his grievances to prison authorities with so fine and legalistic an eye. Brown clearly complained about his medical treatment. As to Hall's property loss, the form includes a brief general statement that when he returned to his cell it was empty, but no specific allegation as to what property was taken or that his property was retained by prison officials for an undue time.

. An example of when an agency would not have the authority to offer a prisoner any relief and the prisoner could proceed directly to the district court would be if a prisoner’s grievance pertained to an act that prison officials are required to perform pursuant to a *947 statute and as to which no non-statutory relief was possible.

. Both Brown's and Hall’s complaints were labeled by the prison authorities initially as Category 7A and, thus, as staff complaints. See Admin. Bulletin 98/10. Both were considered and denied at level one by the Division head. Both then appealed, and both appeals were then considered and decided by the Warden. Both responses at the second level stated that the appeals were being treated as staff complaints. Nothing in the prison regulations or procedures suggests that some appeals are deemed exhausted after the second level and that others must be processed through the third level (except for appeals from disciplinary actions taken against the prisoner). See Cal.Code Regs. tit. 15, § 3084.7(b). If Hall was required to appeal to the third level, as the majority and I agree, so was Brown.