In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3871

ANTHONY L. FLETCHER,

*Plaintiff-Appellant,*

*v.*

MENARD CORRECTIONAL CENTER,
Warden of Security Operations, *et al.,*

*Defendants-Appellees.*

————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 08-cv-1158—**Harold A. Baker**, *Judge.*

————————

SUBMITTED SEPTEMBER 8, 2010—DECIDED OCTOBER 28, 2010

————————

Before BAUER, POSNER and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* Anthony Fletcher, an Illinois state prisoner, brought this civil rights suit against prison employees who he claims violated his federal constitutional rights by using excessive force to restrain him and by recklessly disregarding his need for medical attention. His complaint charges that while transferring him on June 29, 2008, from one cell to another prison guards used excessive force to restrain and move him and that

as a result he suffered "severe injury and pain to wrists, arms, feet, neck, shoulders, and back." For two days, the complaint continues, he was denied medical treatment for his injuries and for asthma, eczema, and diabetes, and as a result he suffered from "diabetic pain" and asthmatic attacks.

Because he had three "strikes" against him (that is, earlier prisoner suits filed by him that had been dismissed as being frivolous or malicious or failing to state a claim), he could not proceed in the district court *in forma pauperis* (which would have excused him from having to pay the filing fee up front rather than in installments, 28 U.S.C. § 1915(b)) unless he was "under imminent danger of serious physical injury." § 1915(g). The district court ruled that he didn't come within this exception to the three-strikes rule; and so, because he hadn't paid the filing fee, dismissed the complaint, precipitating this appeal. The district court refused to certify that the appeal was taken in good faith, § 1915(a)(3), but a motions panel of this court, disagreeing, authorized Fletcher to appeal *in forma pauperis*. Fed. R. App. P. 24(a)(5).

He had the bad luck to have appeared before the same district judge in one of his earlier suits, which was against employees of the county jail in which he had been held before being transferred to Menard. That suit had accused the jail's staff of denying him medicine for his asthma and failing to monitor his diabetes. The defendants had responded by submitting his medical record with their motion for summary judgment and it showed that he had neither asthma nor diabetes. The judge granted the motion for summary judgment, *Fletcher v. Deathridge*,

No. 1:07-cv-1231 (C.D. Ill. Aug. 17, 2009), and Fletcher had not appealed. We can take judicial notice of prior proceedings in a case involving the same litigant. *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th Cir. 2008); *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008); *Campbell v. Clarke*, 481 F.3d 967, 968-69 (7th Cir. 2007); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). The judge ruled similarly in the present case that Fletcher had not been in imminent danger of serious physical injury when he sued, and therefore he could not litigate *in forma pauperis*.

But the judge's reasoning was incomplete because it ignored the alleged beating. Although the beating (if there was a beating) occurred before Fletcher sued, an untreated wound, like an untreated acute illness, could pose an imminent danger of serious physical harm. *Ciarpaglini v. Saini*, 352 F.3d 328, 329-31 (7th Cir. 2003); *Ibrahim v. District of Columbia*, 463 F.3d 3, 6-7 (D.C. Cir. 2006); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004); *McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir. 2002). Interpreted generously, this is what his pro se complaint alleges.

There is an alternative ground on which the dismissal of this suit must be affirmed, however: failure to exhaust administrative remedies. Exhaustion is explicitly required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 523-25 (2002), and there is no exception for prisoners who allege "imminent danger" in order to be excused from having to pay the entire filing fee at the time the suit

is brought. *McAlphin v. Toney*, 375 F.3d 753, 755 (8th Cir. 2004) (per curiam). Imminent danger excuses *only* that, and not the duty to exhaust as well. *Id.*

Even so, if there are no administrative remedies, then of course there's nothing to exhaust. And we think it's also true that there is no duty to exhaust, in a situation of imminent danger, if there are no administrative remedies for warding off such a danger. Although there is no "futility" exception to a prisoner's duty to exhaust, *Booth v. Churner*, 532 U.S. 731 (2001); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002), futility is not the same as unavailability. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). If a prisoner has been placed in imminent danger of serious physical injury by an act that violates his constitutional rights, administrative remedies that offer no possible relief in time to prevent the imminent danger from becoming an actual harm can't be thought available. See *Thornton v. Snyder*, 428 F.3d 690, 695-96 (7th Cir. 2005); *Dixon v. Page, supra,* 291 F.3d at 491; *Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008); *Beharry v. Ashcroft,* 329 F.3d 51, 58 (2d Cir. 2003). Suppose the prison requires that its officials be allowed two weeks to respond to any prisoner grievance and that before the two weeks are up there can be no action taken to resolve it. An administrative remedy could not be thought available to a prisoner whose grievance was that he had been told that members of the Aryan Brotherhood were planning to kill him within the next 24 hours and the guards were refusing to take the threat seriously. Cf. *Ashley v. Dilworth,* 147 F.3d 715, 717 (8th Cir. 1998) (per curiam).

It's true that in *Booth v. Churner*, *supra*, the Supreme Court said that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." 532 U.S. at 742 n. 6. But we must read this language in context. The inmate wanted damages, and the administrative remedies offered by the prison didn't include damages, so he argued that resort to the administrative procedures would be futile. But the requirement of exhaustion is intended primarily for the benefit of the prison rather than the prisoner. It is quid pro quo: a prison grievance procedure offers the prisoner the possibility of prompt remediation, but in exchange he must give the prison a shot at attempting such remediation before he drags its employees into court. He may not circumvent the requirement of exhaustion by picking out a remedy that the prison happens not to offer and contending that its absence entitles him to bypass the administrative grievance procedure.

But a case in which the prisoner might be killed if forced to exhaust remedies that do not include any remedy against an imminent danger is not a circumvention case and is not controlled by *Booth*, which in any event distinguished between a case in which there are remedies but none to the prisoner's liking (which was the *Booth* case) and a case in which there is no remedy; for the Court said that "without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Id.* at 736 n. 4. If it takes two weeks to exhaust a complaint that the complainant is in danger of being killed tomorrow, there is

no "possibility of some relief" and so nothing for the prisoner to exhaust.

But Illinois *has* created an emergency grievance procedure—an expedited process for prisoners such as Fletcher who claim to be in urgent need of medical attention. 20 ILCS § 504.840. The grievance is forwarded directly to the warden, who determines whether "there is a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate. § 504.840(a). If there is such a risk, the grievance is handled on an emergency basis and the warden is required to tell the inmate what action if any will be taken in response to the alleged danger. § 504.840(b).

Fletcher says he did file an emergency grievance—and on the very day of the beating he claims to have suffered. But just two days later, without waiting for a response, he filed this suit though even on his own account so short a delay in the response to his grievance could not have endangered his health seriously. He concedes that he was receiving medical treatment—even for his nonexistent asthma and diabetes—within a week of mailing his complaint to the court, but insists that if imminent danger existed when he sued, what happened later was irrelevant. And it is true that if when the prisoner files his suit he is in imminent danger of serious physical harm, he doesn't have to pay the entire filing fee up front even if later the danger passes; the existence of the danger and therefore the applicability of the imminent-danger exception to the "three strikes" rule are determined when the suit is filed. Opinions that say the danger must be imminent when the

complaint is filed, e.g., *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003) (per curiam); *Malik v. McGinnis*, 293 F.3d 559, 562 (2d Cir. 2002) (citing cases), mean by this that if the danger had passed when the suit was filed the imminent-danger exception is inapplicable; the suit lacks the urgency that would justify allowing the prisoner who has accumulated three strikes to proceed *in forma pauperis*. Congress "wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (3d Cir. 2001) (en banc). By the same token, however, if the danger is imminent when the complaint is filed, the exception clicks in.

But remember that the imminent-danger exception does not excuse a prisoner from exhausting remedies tailored to imminent dangers. Fletcher had an available such remedy, and—the danger being not of the greatest urgency—he had to wait more than two days to test its availability before he could sue. We are given no reason to think that the prison's grievance procedure would take longer than judicial procedure. So imminent danger did not excuse his failure to exhaust his administrative remedies, and his suit was therefore properly dismissed.

AFFIRMED.