NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 26, 2021[*]
Decided July 27, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3358

| | |
|---|---|
| ANTHONY E. QUINTANA, <br> *Plaintiff-Appellant,* | Appeal from the United States District <br> Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-822-wmc |
| DANNEY WOODWARD, <br> *Defendant-Appellee.* | William M. Conley, <br> *Judge.* |

## O R D E R

Soon after Anthony Quintana was booked at the Marathon County Jail in Wausau, Wisconsin, he was badly assaulted by another inmate. Quintana sued a jail officer under 42 U.S.C. § 1983 for failing to protect him from the inmate's attack in violation of his Fourth Amendment rights. The district court entered summary judgment for the officer, concluding that Quintana had failed to exhaust the available administrative remedies. We agree with that ruling and therefore affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Correctional officer Danney Woodward conducted Quintana's screening interview when Quintana was booked into the jail. Quintana informed Woodward that he believed that a man named Adam Radek was at the jail and posed a threat to him because he had exposed Radek as an informant. Woodward responded that Radek was no longer at the jail, so Quintana did not require special protection. After the screening, Quintana was taken to a housing unit. There, Radek attacked him, and Quintana was sent to the hospital for treatment of broken bones and lacerations. When Quintana returned to the jail, Woodward apologized to him.

Quintana sued Woodward for failing to protect him from Radek's attack. Woodward moved to dismiss the complaint, asserting that Quintana had failed to exhaust the jail's administrative remedies because he did not submit a grievance about the incident, as required under the jail's rules. *See* 42 U.S.C. § 1997e(a). (At his booking, Quintana received a copy of the rules, including the grievance policy.) Quintana responded that Woodward's apology to him constituted an informal resolution of his complaint, as allowed under the jail's grievance policy, and thus he had satisfied the exhaustion requirement. Further, Quintana said that he tried to "file[] a request[] to the staff … the best way he could" but that he never received an answer.

The court converted Woodward's filing into a motion for summary judgment (because it relied on evidence beyond the pleadings, and Quintana had responded) and granted the motion on January 24, 2020. First, the court concluded that the oral apology did not satisfy the exhaustion requirement because it did not provide the jail administration the opportunity to address Quintana's complaint. Second, Quintana's argument that he tried to submit a grievance failed because he had not submitted any evidence that his alleged grievance brought up Woodward's failure to protect him, and there was no indication that whatever efforts he made complied with the jail's grievance procedures. The court noted, however, that it would consider reopening the matter if Quintana could provide more detail of his efforts to submit a grievance.

Quintana submitted an affidavit in which he attested that, about two days after the assault, he told a jail officer about the incident and the pain he was in, and the officer gave him a blank grievance form. Quintana used that form, he said, to complain to jail staff that Woodward sent him to the housing unit without checking to ensure Radek was not still at the jail, leading to the attack. No one answered his complaint.

On September 25, 2020, the court entered a text order construing the affidavit as a motion to reopen the case, *see* FED. R. CIV. P. 59(e), and denying it. Although

Quintana's affidavit suggested that he had complained that Woodward failed to protect him from the assault, it still failed to provide any detail about actions he took to file a grievance in accordance with the jail's policy, or any follow-up action he took when he did not receive a response within five days as required by the rules.

Shortly thereafter, on October 20, Quintana filed a motion to "[p]reserve [his] appeal rights" because he had been transferred to a new facility and was placed in quarantine because of the COVID-19 pandemic, so he did not have access to the property he needed to file his appeal. The court granted Quintana a 30-day extension until November 25 to file a notice of appeal, explaining that even if Quintana remained in quarantine, this extension should be sufficient given the minimal requirements of a notice of appeal. Before that deadline, on November 5, Quintana also filed a motion requesting that the court recruit counsel to assist him "on [his] appeal and case."

On December 4, Quintana filed another motion for an extension of time to file his notice of appeal. He attached one to the motion, explaining that he had handed it to a correctional officer on November 8 to be deposited into the institution's legal mail. For prisoners in the COVID-19 quarantine wing, he said, this was the only way to send legal mail. But when he was moved from quarantine to a new cell on November 27, his notice of appeal was given back to him with a note saying that he needed to go through his "Unit Team" to send legal mail. In a text order, the court explained that it had already granted Quintana the maximum extension allowed. *See* FED. R. APP. P. 4(a)(5)(C). Quintana then moved to proceed in forma pauperis on appeal. The court granted the motion, noting that the notice of appeal appeared to be untimely but concluding that only this court could determine whether there was appellate jurisdiction.

We begin with the jurisdictional matter that we asked the parties to brief— whether Quintana timely gave notice of his intent to appeal. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007). Initially, Quintana had 30 days from the court's September 25 order denying his Rule 59(e) motion to file a notice of appeal, *see* FED. R. APP. P. 4(a)(4)(A)(iv); and once he received the 30-day extension, he had until November 25. Although factual questions exist that bear on whether, under the prison mailbox rule, Quintana's notice of appeal can be deemed filed as of November 8, we need not decide the issue. Quintana gave sufficient notice of his intent to appeal in two other timely post-judgment filings: his request for an extension of time and his request for appellate counsel. *See Nartey v. Franciscan Health Hosp.*, ---F.4th----, No. 19-3342, 2021 WL 2644282 at *3 (7th Cir. 2021).

We reject Woodward's suggestion that those filings were too ambiguous to substitute as a notice of appeal. Quintana said that he wanted to preserve his appellate rights so that he could "file an appeal to [the district] court's order" and requested counsel to "help [him] … on [his] appeal." *See Owens v. Godinez*, 860 F.3d 434, 437 (7th Cir. 2017) (request for extension of time construed as notice of appeal because it informed defendant of plaintiff's intent to appeal). Woodward cites a nonprecedential order in which we concluded that a letter could not stand in for a notice of appeal because we could not infer which of several orders the appellant wished to appeal. *See Hoeft v. Straub*, 497 F. App'x 615 (7th Cir. 2012). True, Quintana did not state what decision he intended to appeal, either. But he could have been referring to only the denial of his Rule 59(e) motion or the original judgment, and the former merges into the latter as a single judgment for purposes of an appeal. *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020). Further, in addressing Quintana's filings, the district court repeatedly referred to Quintana's desire to appeal its order of "September 25, 2020"—denying the Rule 59(e) motion—so the court, at least, found it clear. The defendant had sufficient notice, and so our appellate jurisdiction is secure.

As for the merits, Quintana presses his argument that Woodward's apology constituted an informal resolution of his grievance per the jail's policies and thus satisfied § 1997e(a). He further argues that any administrative remedies were rendered unavailable to him as soon as he was attacked. (Quintana has abandoned his argument that he filed a "complaint" but never heard back; he now says that he asked for grievance forms but never received them.)

The discussion with Woodward does not satisfy the exhaustion requirement under § 1997e(a). To properly exhaust administrative remedies, Quintana needed to comply with the jail's grievance policy, *Jones v. Bock*, 549 U.S. 199, 922–23 (2007), which required him to file a written grievance and an appeal. The jail's rules also require inmates to try to resolve their grievances informally, but any apology Woodward made did nothing to resolve Quintana's complaint that Woodward failed to protect him. Nor did it put the appropriate jail staff on notice of that issue. Because there is no evidence that Quintana properly filed any grievance or appeal, he has not exhausted the available remedies.

As for Quintana's insistence that, after the assault happened, the exhaustion requirement was void because Woodward could no longer prevent the assault, he is mistaken. As long as the administrative authority has the ability to take *some* action in response to the complaint, a remedy is still "available" for the purposes of § 1997e(a).

*Booth v. Churner*, 532 U.S. 731, 740–41 (2001). Here, although using the jail's grievance system would not have prevented the injury or resulted in Quintana's desired remedy of money damages, that system nevertheless could have resulted in the discipline of Woodward or exposed factual disputes about the incident. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023–24 (7th Cir. 2002); *see also Booth*, 532 U.S. at 740–41 (exhaustion is necessary no matter what relief a prisoner seeks).

We have considered Quintana's other arguments, and none has merit.

AFFIRMED