**Christopher A. JONES, Plaintiff,**

v.

**Mary STEWART and Glen Clayton Defendants.**

**No. 3:03–CV00032ECR(RAM).**

United States District Court, D. Nevada.

Oct. 4, 2006.

Christopher A. Jones, Carson City, NV, Pro se.

Janet E. Traut and Stephen Quinn, Nevada Attorney General's Office, Litigation Division, Carson City, for Defendants or Respondents.

### Amended Order

EDWARD C. REED, JR., District Judge.

The order of the court (# 274), dated and filed on September 19, 2006, is amended to read as follows:

On August 21, 2006, Defendants filed a Motion to Dismiss for Failure to Exhaust Administrative Remedies (# 257). In the Motion, Defendants argue that Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), as construed by the Supreme Court in *Woodford v. Ngo,* —— U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). On August 25, 2006, a hearing was held on Defendants' Motion to Dismiss (# 257), and this Court denied the motion, noting that this written order would follow (Mins. Of Proceedings (# 261)).

### I. Deadline for Dispositive Motions

This case was set for trial on August 29, 2006. The deadline for filing dispositive motions was April 30, 2004 (Mins. of the Ct. (# 70)). Defendants' motion to dismiss was filed August 21, 2006, after the deadline for dispositive motions had passed. No motions to extend the deadline for dispositive motions have been filed since the deadline was extended to April 30, 2004.

As Defendants' motion indicates, the motion could not have been filed prior to the Supreme Court's decision in *Woodford v. Ngo,* —— U.S. ——, 126 S.Ct. 2378, 165

L.Ed.2d 368, on June 22, 2006. Defendants argue this action should be dismissed because Plaintiff failed to exhaust the prison's administrative remedies when he filed his grievance after the fifteen-day deadline had passed. (Defs.' Mot. to Dismiss for Failure to Exhaust Administrative Remedies (# 257)). Before *Woodford*, the law in the Ninth Circuit did not allow for a complaint to be dismissed for failure to exhaust if the prison's grievance deadline had passed. *Ngo v. Woodford*, 403 F.3d 620 (9th Cir.2005).

Because Defendants' motion relies on the recent Supreme Court decision, we overlook the late filing of the motion and decide the motion on the merits.

## II. Background

Plaintiff Christopher A. Jones, an inmate at Ely State Prison (ESP), instituted this action on December 4, 2002 in the Seventh Judicial District Court of the State of Nevada, County of White Pine. Defendants removed the action to this Court, where they filed a Notice of Removal (# 2) on January 22, 2003. Mr. Jones' Complaint alleges, among other things, that Defendants, correctional officers Mary Stewart and Glen Clayton,[1] violated his Eighth Amendment rights through deliberate indifference to his serious medical needs and that they are therefore liable under 42 U.S.C. § 1983. (Notice of Removal (# 2), Ex. A, Complaint). Plaintiff's other claims were dismissed: one for failure to state a claim (Order (# 15)) and the others on summary judgment (Order (# 121)).

Defendants brought the instant motion on August 21, 2006. The motion to dismiss is based on Plaintiff's alleged failure to exhaust administrative remedies under

42 U.S.C. § 1997e(a). In his complaint, Mr. Jones alleges that on May 23, 2002 he was forced to pull 400 pounds of his property while in wrist restraints despite medical restrictions based on his shoulder problems. (Notice of Removal (# 2), Ex. A, Complaint ¶¶ 1–2, 4–5, 11). He sent a kite to Associate Warden of Operations Neven on May 31, 2002, seeking an informal resolution of the issue. (Resp. in Opp. To CMS Defs.' Mot. For Summ. J. (# 112), Ex. 9, Inmate Interview Request). On July 22, 2002, Plaintiff filed a grievance alleging "deliberate indifference and cruel and unusual punishment in being forced to pull heavy property by staff notwithstanding telling [staff] that [he had] a medical restriction not to do so." (Defs.' Mot. To Dismiss for Failure to Exhaust Administrative Remedies, Index of Exhibits 3 (# 257–2), Ex. A, Inmate Grievance Form 3).

A first level grievance response was issued on July 29, 2002, which addressed the grievance on the merits and denied it as unfounded. (Defs.' Mot. To Dismiss, Index of Exhibits 4 (# 257–2), Ex. A, Inmate Grievance Level 1 Response/Appeal Form). On August 4, 2002, Plaintiff appealed his grievance to the second level. (Inmate Grievance Level 1 Response/Appeal Form). The response, on August 14, 2002, also addressed the grievance on its merits, declaring that staff had been advised of Plaintiff's medical restrictions and that the grievance was resolved. (Defs.' Mot. To Dismiss, Index of Exhibits 5 (# 257–2), Ex. A, Inmate Grievance Level 2 Response/Appeal Form). Dissatisfied that the warden had not addressed his claim of deliberate indifference, Plaintiff appealed his grievance to the third level on August 21, 2002. (Inmate Grievance Level

1. In the original complaint, Glen Clayton was named as "John Doe". (Complaint, Attached as Ex. A to Notice of Removal, # 2). Glen Clayton was substituted for Defendant John doe by court order (Mins. of the Ct. (# 34)) (granting Plaintiff's Motion to Amend Complaint (# 24)).

2 Response/Appeal Form). Again, his grievance was addressed on the merits and denied. The level three response upheld the second level response and noted, "At the time of the incident ... there was no health restriction affecting you. As a result, it was not the security staff's fault in requiring you to move your own property." (Defs.' Mot. To Dismiss, Index of Exhibits 6 (# 257–2), Ex. A, Inmate Grievance Level 3 Response/Appeal Form).

### III. Nevada's Inmate Grievance Procedure

At the time of this case, Nevada's Inmate Grievance Procedure provided a fifteen-day window after an incident during which an inmate could file a formal grievances. (Defs.' Mot. to Dismiss, Index of Exhibits 14 (# 257–2), Ex. B, Administrative Regulation 740 (01/21/92) ¶ K). The time limit is set forth in paragraph K, titled "Informal Resolution", which provides:

> Prior to initiating a formal written grievance, an inmate is expected to attempt to resolve the grievance informally.... If this effort fails, the inmate may file a formal grievance within fifteen (15) days of the alleged incident. THE INMATE SHALL SPECIFY HOW AND WHEN AN ATTEMPT WAS MADE TO RESOLVE THE PROBLEM INFORMALLY. There are not time limits for filing grievances alleging use of excessive force or harassment/retaliation.

(AR 740 (01/21/92) ¶ K). Paragraph N, "Time Limits", further sets forth the deadlines for filing appeals within the administrative grievance system. "The grievant shall be allowed five (5) calendar days *upon receipt* of a response to appeal to the next level" (AR 740 (01/21/92) ¶ N (emphasis added)).

### IV. Motion to Dismiss for Failure to Exhaust Administrative Remedies

Exhaustion of administrative remedies is required by the PLRA, 42 U.S.C. § 1997e(a). The failure to exhaust administrative remedies under the PLRA is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied,* 540 U.S. 810, 124 S.Ct. 50, 157 L.Ed.2d 23 (2003). Failure to exhaust administrative remedies is an affirmative defense, and Defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119–20. If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

Defendants allege three procedural defects in Plaintiff's grievance. First, Defendants argue the initial grievance was not filed until two months after the alleged incident, 45 days after the time limit for filing formal grievances. Second, they claim that Plaintiff's administrative appeals were not filed within the required five-day windows. Third, Defendants allege Plaintiff did not attempt the required informal resolution of his grievance. Upon Plaintiff's showing that he had attempted informal resolution of the grievance via the May 31, 2002 kite, Defendants withdrew the third alleged procedural defect.

As a factual matter, we find that Plaintiff did fail to file his grievance in a timely fashion. But, with regard to the second alleged procedural defect, we find that Plaintiff fully complied with the time requirements for administrative appeals. At the time in question, Nevada's Inmate

Grievance Procedure clearly provided that inmates have five days from the receipt of a grievance response to appeal the grievance. (Defs.' Mot. to Dismiss, Index of Exhibits 16 (# 257–2), Ex. B, AR 740 (01/21/92) ¶ 9). The defense presented no evidence as to when Plaintiff presented the first level response, so we cannot find the first appeal untimely. And we find that the second appeal was timely: the second level response is marked received on August 20, 2002, one day before Plaintiff appealed to the third level.

Having found Plaintiff's initial filing of the grievance untimely, we move on to decide whether Plaintiff satisfied the PLRA's exhaustion requirement despite this procedural defect.

## V. Exhaustion of Administrative Remedies, 42 U.S.C. § 1997e(a)

■ The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The recent Supreme Court case *Woodford v. Ngo,* —— U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368, held that the PLRA exhaustion requirement demands "proper exhaustion" of administrative remedies. The question raised by this motion is whether administrative remedies are properly exhausted when an inmate's untimely grievance is nonetheless addressed by the prison on its merits.

The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." 126 S.Ct. at 2385 (*quoting Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir.2002)) (emphasis in original). The

Court goes on to state, "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* We read Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion." The "merits test" is satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels. The "compliance test" is satisfied when a plaintiff complies with all "critical procedural rules", including agency deadlines. A finding that a plaintiff has met either test is sufficient for finding "proper exhaustion". Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies.

An alternative reading of *Woodford* is urged by Defendants. Under their proposed reading, Defendants only need to show that Plaintiff failed to meet either the merits or the compliance test to warrant dismissal for failure to exhaust administrative remedies. Such a reading treats timeliness of grievances rather than proper exhaustion as the touchstone of *Woodford.* We believe that this is not the reading intended by the Court in *Woodford* and does not further the policy objectives of the PLRA's exhaustion requirement.

### A. Policy behind Proper Exhaustion

Exhaustion of remedies is designed to serve two purposes under *Woodford.* First, it "protects 'administrative agency authority.'" *Id.* at 2385 (*quoting McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). Second, "exhaustion promotes efficiency." *Id.*

Because exhaustion promotes the use of agency grievance procedures, agency authority is protected by requiring ex-

haustion of remedies. Exhaustion deters complainants from disregarding internal agency grievance procedures. And, an exhaustion requirement gives agencies the opportunity to correct issues through internal grievance procedures. *Id.; Porter v. Nussle,* 534 U.S. 516, 523, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *McKinney v. Carey,* 311 F.3d 1198, 1200 (9th Cir.2002).

With regard to efficiency, the majority in *Woodford* notes that grievances can be addressed more quickly and economically through agency grievance procedures. Even when the complainant's grievance is denied, the procedure itself might convince the complainant not to pursue the matter in court, thus conserving resources. *Woodford,* 126 S.Ct. at 2385; *Porter v. Nussle,* 534 U.S. at 524, 122 S.Ct. 983; *Booth v. Churner,* 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *McKinney v. Carey,* 311 F.3d at 1200. The Court also notes that proper exhaustion can make dispute resolution, in the agency or even in court, more efficient by creating a record shortly after the event occurs: "[P]roper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Woodford,* 126 S.Ct. at 2388. *See also Porter v. Nussle,* 534 U.S. at 525, 122 S.Ct. 983 ("And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy"); *Booth v. Churner,* 532 U.S. at 737, 121 S.Ct. 1819; *McKinney v. Carey,* 311 F.3d at 1200.

The majority opinion in Woodford indicates that the central goal served by requiring proper exhaustion under the PLRA is preventing prisoners from bypassing the administrative grievance pro-cess. Justice Alito deals with the hypothetical situation of a prisoner who seeks to bypass the prison grievance system by filing a late grievance, without excuse, resulting in dismissal of the claim. *Woodford v. Ngo,* 126 S.Ct. at 2388–89. He notes that even if prisons hear grievances not filed in a timely manner, a prisoner could still bypass the grievance process by violating other procedural rules until the grievance is dismissed on procedural grounds. *Id.* This hypothetical example indicates an overarching concern with prisoners who might intentionally ignore procedural requirements so as to avoid the administrative grievance process altogether. Likewise, in an earlier opinion, the Supreme Court noted, "Beyond a doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle,* 534 U.S. at 524, 122 S.Ct. 983. *See also McKinney v. Carey,* 311 F.3d at 1200.

**B. Policy Concerns and the Relationship Between the "Merits" and "Compliance" Tests**

The result of this motion turns on whether Defendants must show Plaintiff failed to meet either or both the merits test and compliance test. If they only need show failure to meet one test, the case ought to be dismissed. But, if they must show failure to meet both tests, dismissal is inappropriate.

In *Woodford,* Viet Mike Ngo, the inmate complainant, failed to meet both the merits and compliance tests. Ngo failed to meet the merits test because the California prison in that case never addressed his grievance on its merits. *See* 126 S.Ct. at 2383–84 (his "grievance was rejected as untimely"). His administrative appeal only dealt with procedural issues (whether a grievance regarding a continuing issue can be untimely), not the merits of his grievance. *Id.* at 2403 (Stevens, J., dissenting). Also,

Ngo failed to meet the compliance test by violating a critical procedural rule. He filed his grievance over five months after the deadline had passed. *Id.* at 2383–84. Defendants ask us to extend this ruling to dismiss the claim of a plaintiff who has only failed to meet one test. Reading *Woodford* in light of the policy considerations set forth in Justice Alito's majority opinion, we decline to so extend the Supreme Court's holding.

The policy considerations set forth in *Woodford* guide our reading of the tests and the relationship between them. According to the majority opinion, the overarching goal behind requiring exhaustion is encouraging inmates to use prison grievance procedures. *Id.* at 2385, 2387–89. The proper exhaustion requirement generally serves two purposes: protecting administrative agency authority and promoting efficiency. *Id.* at 2385. We hold that, in light of these policy concerns, the merits and compliance tests are independent, not cumulative. Satisfaction of either test is sufficient for a finding of proper exhaustion, and a defendant must show failure to meet both tests to succeed on a motion to dismiss for failure to exhaust administrative remedies.

This case involves a plaintiff who apparently complied with all procedural requirements other than the timeliness requirement; he brought his case through informal review and all three levels of formal administrative review before filing in court. At each level, his complaint was addressed on the merits and then appealed on the merits. Plaintiff is not the hypothetical inmate described in *Woodford;* he did not commit one procedural error after another in order to have his grievance denied on procedural grounds.

The goal of protecting administrative agency authority is served by requiring Plaintiff to meet either the merits test or the compliance test. If a plaintiff only satisfies the merits test, as happened in this case, administrative agency authority is still protected. The merits test treats administrative agency actions as determining whether administrative remedies were properly exhausted. The body of critical procedural rules to which inmates must adhere is determined first under the merits test by the prison system, which decides when procedural defects bar grievances from being heard on the merits. It is only once the agency treats a rule as critical (that is, by denying claims on the basis of a procedural defect) that the court will determine whether the rule is in fact critical under the compliance test. In contrast, requiring satisfaction of the compliance test as well as the merits test for proper exhaustion would second guess the agency by determining that one of the agency's procedural rules is critical despite the agency's determination that violation of the rule does not warrant dismissal of a grievance.

Requiring a defendant to show failure to meet both tests leaves agencies a wider breadth of agency authority. If a plaintiff meets the merits test by having his grievance and appeals addressed on the merits, then the agency has determined whether the plaintiff exhausted the administrative agency's dispute resolution procedures to the agency's satisfaction. If the agency does not address the grievance or appeals on the merits, only then will the court move on to determine whether the inmate nonetheless exhausted available remedies by complying with all critical procedural rules, such as deadlines. It is only if an agency refuses to address a claim despite an inmate's complete compliance with all critical procedural rules, such as deadlines, that agency action would not be determinative.

Defendants argue that it is an inmate's actions that are the focus of both tests in *Woodford.* With regard to the compliance

test, this is certainly the case. But, the merits test focuses more on agency responses to an inmate's actions. Admittedly, the inmate must act for the agency to respond, but the merits test measures the sufficiency of an inmate's actions by looking to the agency's response. If the agency addresses a grievance on the merits at every level available, the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly (so that the agency addresse[d] the issues on the merits)." 126 S.Ct. at 2385. This understanding of the merits test comports most closely with the language of *Woodford* and the Supreme Court's concern with protecting administrative agency authority.

Agency authority is also protected once the merits test is satisfied because the agency has had a full chance to address and correct any internal issues before going to court. In addition, potential plaintiffs are discouraged from disregarding key internal grievance procedures. If a grievance is denied on the basis of critical procedural defects, the inmate would lose the opportunity to bring the case to court.

Likewise, the efficiency goal is served by requiring a defendant to show a plaintiff failed to meet both the merits and compliance tests before dismissal of the claim. If, as happened here, a plaintiff satisfies the merits test despite failing to satisfy the compliance test, efficiency is still maximized. Regardless of any procedural defects, grievances heard on the merits by an agency are addressed by the agency's quicker and more economical dispute resolution procedures as intended by the PLRA. Furthermore, having an untimely grievance addressed on the merits in the administrative agency's grievance system is just as likely to convince a complainant not to pursue the matter in federal court as having a timely grievance addressed on the merits would be. Lastly, an administrative record is still generated when the agency hears the grievance and appeals on the merits. Here, the prison investigated whether or not Plaintiff was under medical restrictions when evaluating his grievance and appeals (Def's Mot. To Dismiss, Index of Exhibits 4–6 (# 257–2), Ex. A, Inmate Grievance Level 1 Response/Appeal Form, Inmate Grievance Level 2 Response/Appeal Form, & Inmate Grievance Level 3 Response/Appeal Form). The administrative record produced in response to Plaintiff's grievance may prove informative when resolving this factual issue at trial.[2]

---

**2.** Admittedly, the delay in filing may, in some instances, result in a sub-optimal administrative record. A delay may not allow "witnesses [to] be identified and questioned while memories are still fresh [or] evidence [to] be gathered and preserved" to the same extent that would be possible if a grievance is filed in a timely manner. *See Woodford,* 126 S.Ct. at 2388. But, in this case, the delay did not appear to be a problem in the prison's investigation. In each grievance response, timeliness was never mentioned. Defendants argue that the delay prevented the prison from properly identifying which staff members had escorted Mr. Jones during his cell move. But, the prison was on notice from May 31, 2002 that Plaintiff had a grievance regarding his May 23, 2002 cell move. Furthermore, the grievance responses never mention an inability to identify the staff responsible.

It is also interesting to note that Nevada has since modified its Inmate Grievance Procedure to provide a longer filing time for grievances like the one at issue in this case. Were the facts at issue to occur today, Mr. Jones would have six months rather than fifteen days during which to file his grievance. Administrative Regulation 740.02 (01/05/04) 1.4.1.1, *available at* http://www.doc.nv.gov/ar/pdf/AR740.pdf (giving inmates six months to file a grievance if "the issue involves ... personal injury"). In light of Nevada Department of Corrections' decision to lengthen the filing period and ESP's acceptance without comment of Mr. Jones' late grievance, it seems appropriate to infer that the agency did not think a delay like Mr. Jones' would prejudice the prison's ability to efficiently investigate a grievance.

## VI. Pre–Woodford Nature of the Facts

Between the Ninth Circuit's March 2005 decision in *Ngo v. Woodford* and the Supreme Court's June 2006 reversal in *Woodford*, the rule in the Ninth Circuit was that a time bar to administrative remedies sufficed as exhaustion of remedies. *Ngo v. Woodford*, 403 F.3d 620 (2005), rev'd, *Woodford v. Ngo*, — U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Defendants argue that the prison, operating on pre-*Woodford* assumptions, heard Mr. Jones' grievance on the merits because denying the grievance on a procedural basis might result in defending a federal case before ESP could internally address and potentially resolve Mr. Jones' grievance. The facts in this case, however, occurred in 2002, well before the Ninth Circuit's 2005 ruling in *Ngo*. But, Defendants argue that even before the decision in *Ngo*, there was sufficient uncertainty regarding whether an untimely grievance not heard by a prison on the merits would be treated as exhausted, and, as a result, Nevada prisons were advised to address untimely grievances on the merits. In effect, Defendants argue for a transitional exception to *Woodford*; under the proposed exception, meeting the merits test alone would not satisfy the exhaustion requirement where the procedurally defective grievance was heard by the agency before *Woodford*.

Defendants failed to present the Court with a published order or opinion, issued before the facts at issue in this case, that held passage of the grievance deadline suffices for exhaustion. This Court has likewise failed to find any such case.[3] Additionally, in light of Nevada Department of Corrections' 2004 decision to extend the deadline to six months, it seems that the decision to hear Mr. Jones' grievance two months after the incident might have been related more closely to the needs of the prison rather than the pre-*Woodford* legal environment. *See* discussion *supra* note 2.

Even if the decision to hear Plaintiff's grievance was a result of the pre-*Woodford* environment, it would still be inappropriate to find Plaintiff failed to exhaust administrative remedies on these grounds. Congress intended the PLRA to require proper exhaustion when the PLRA came into force. *Woodford*, 126 S.Ct. at 2393 (Breyer, J., concurring in the judgment) ("I agree with the court that . . . Congress intended the term 'exhausted' to 'mean . . . proper exhaustion.'"). But, before the PLRA, the Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended 42 U.S.C. § 1997e (1994 ed.), only provided a "limited exhaustion requirement." *McCarthy v. Madigan*, 503 U.S. 140, 150–151, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). *See also Woodford*, 126 S.Ct. at 2382 (describing the Act as providing a "weak exhaustion provision"). The 1980 Act provided that "the court shall, if the court believes such a requirement would be appropriate and in the interests of justice, continue [an inmate's civil rights case] for a period of not to exceed ninety days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available." 42 U.S.C. § 1997e(a)(1) (1994 ed.). Given the "limited" nature of the pre-PLRA exhaustion requirement, it would seem that before the PLRA came into force, the legal environment encouraged prisons to hear all prisoner grievances, despite any procedural defects, in order to have an opportunity to address the grievance internally before defending a suit. Nonetheless, Congress, knowing that prisons were operating under these assumptions, provided no exception

---

**3.** In *Ngo,* the Ninth Circuit notes that the effect of an agency's grievance time-bar on exhaustion of remedies was "an issue of first impression in [the Ninth] Circuit" as of 2005. 403 F.3d at 622.

to the PLRA's exhaustion requirement to account for the transition period.

Through the PLRA, Congress intended to move from a "limited exhaustion requirement" to a "proper exhaustion" requirement without offering any exceptions to account for the effect of the change on the prisons' treatment of grievances. Had the PLRA been interpreted in accordance with its intentions (as understood in *Woodford*) from 1996, the prisons would have encountered a legal change similar to that experienced by prisons with the handing down of the decision in *Woodford.* Because the PLRA offered no special provisions for such cases in 1996, it is inappropriate to read such an exception as governing the transition brought about by *Woodford.*

### *VII*

It is therefore ordered that Defendants' motion to dismiss (# 257) is denied.